The **WYOMING STATE DEPARTMENT OF EDUCATION, Wyoming State Board of Education, and Lynn Simons, State Superintendent of Public Instruction, Appellants (Appellees-Respondents),**

v.

**Larry W. BARBER and Fremont County School Dist. No. 25, State of Wyoming, Appellees (Appellants-Petitioners).**

**No. 5600.**

Supreme Court of Wyoming.

Aug. 18, 1982.

Steven F. Freudenthal, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Edgar Young, Asst. Atty. Gen., Cheyenne, for appellants.

R. I. Leedy, Hettinger & Leedy, P. C., Riverton, for appellees.

Patrick E. Hacker, Graves, Hacker & Phelan, P. C., Cheyenne, for amicus curiae Wyoming Educ. Assn.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

The Wyoming State Department of Education, Wyoming State Board of Education (the Board), and the State Superintendent of Public Instruction are here appealing a district court reversal of a State Board of Education decision not to certify the appellee Larry Barber to act as a school superintendent within the state. These issues are raised for review:

1. Is the State Board of Education empowered by § 21–2–304(a)(iii)[1] to administer the programs governing the issuance of certificates for school district superintendents in Wyoming?

2. Was the appellee denied due process of law by the Board's decision to deny him a certificate?

3. Is the decision of the Board supported by substantial evidence?

We will reverse, holding that the State Board of Education acted within the scope of its powers in denying appellee Barber's application for a certificate, the decision is supported by substantial evidence and appellee was not denied due process of law.

## FACTS

The present dispute originated with Fremont County School District Number 25 soliciting inquiry from applicants for the position of superintendent of schools. Pursuant to that search appellee Larry Barber was chosen as the top candidate, and, in accordance with an agreement reached by the parties, Barber, in May of 1980, applied[2] to the State Department of Education for a superintendent's certificate.

On June 2, 1980 the Director of the Accreditation Services Unit of the Department of Education denied Barber's request for a school superintendent's certificate. On June 11, 1980 the School District requested that the State Board of Education grant Dr. Barber an exception from various of the certification requirements. On June 19, 1980, the State Board of Education met through the medium of a conference call, the result of which was a decision to deny the request for an exception from the certification requirements.

On July 14, 1980, Mr. Barber requested that he be afforded a hearing pursuant to the State Board of Education's Rules of Practice and Procedure. Acting upon this request, the Board on July 20, 1980 agreed that appellee was entitled to a hearing and appointed a law professor from the University of Wyoming to act as a hearing officer. The School District was also permitted to join in the request for a hearing.

The hearing was held January 5 through 7, 1981 with the hearing officer presiding. Based upon the evidence submitted, the hearing officer filed his proposed findings and conclusions with the State Board of Education on April 7, 1981, in which he

---

1. § 21 2 304(a)(iii) W.S.1977 provides:

"(a) In addition to any other duties assigned to it by law, the state board *shall*:

\* \* \* \* \* \*

"(iii) Prescribe rules and regulations for administering the laws governing the certification of school administrators, teachers and other personnel to require either examination in specified subjects, or the completion of courses in approved institutions, or both. The board shall provide for certification of teachers of the Arapahoe and Shoshoni languages. Rules and regulations shall require the following minimum qualifications, and such additional qualifications for professional training and a broad general education as the board may designate:

"(A) For teachers: a degree from an accredited college or university;

"(B) For administrators: qualification as a teacher, as provided in the preceding subsec-

tion plus appropriate experience as such teacher and additional training in educational administration;

"(C) Provided, further that the board may in its discretion make such exceptions as to both teachers and administrators as it deems necessary and proper in special circumstances;" (Emphasis added.)

2. The record reflects that although Mr. Barber never did submit a formal application to the Board as required by Section 4 of the Rules and Regulations Governing Teacher Certification in the Wyoming Public Schools (1979 Ed.), he requested to be certified through a letter to the Director of the Accreditation Services Unit to which he had attached a list of credentials. The lack of required application was not relied upon by the Board as a reason for denial and is not an issue in this appeal.

recommended that the decision to deny Barber a certificate be affirmed both with respect to the original denial and the refusal to grant an exception. This recommendation was adopted by the Board on April 25, 1981.

Dr. Barber and the School District then appealed the Board's final decision to the district court pursuant to provisions of the Wyoming Administrative Procedure Act (§§ 9–4–101 through 9–4–115). The appeal culminated in a district court order reversing the State Board of Education's decision not to certify the appellee. Further facts and relevant portions of the court's order will be discussed in conjunction with our resolution of the issues.

## IS THE STATE BOARD OF EDUCATION THE CERTIFYING AGENCY EMPOWERED TO ACT IN THIS CASE?

The first issue for our consideration questions the power of the State Board of Education to deny appellee a certificate to act as a school superintendent in Wyoming. The question is structured by reason of the district judge's decision that the legislature had lodged the final authority to decide certification disputes within the discretion of the State Superintendent of Public Instruction rather than the State Board of Education. Up to the time that the district court entered its decision, none of the parties had challenged the power or propriety of the Board to settle the dispute. Even so, we consider a resolution of the question raised by the district judge to be of utmost importance because of the impact that such a holding would have upon the administration of the Wyoming public school system.

The State Board of Education is a body composed of nine members appointed by the governor to serve six-year terms with the approval of the Wyoming Senate. Section 21–2–301, W.S.1977. Of the various duties delegated by the legislature to the Board in § 21–2–304, W.S.1977, one of the most important is outlined in subsection (a)(iii). That portion of the statute declares that the State Board of Education shall *administer* the laws "governing the certification of

school administrators, teachers and other personnel" by prescribing appropriate rules and regulations. Section 21–2–304(a)(iii), supra n.1. The statute also includes "minimum" qualification requirements for guiding the Board's delegated rule-making and administrative function. Among the "minimum" qualifications of which the statute speaks is the provision that the Board's rules and regulations regarding professional educational certificates for school administrators must require a degree from an accredited college or university, appropriate experience as a *teacher*, training in educational administration, and such additional professional training and education as the Board may designate. Section 21–2–304(a)(iii)(A) and (B), supra n.1. Finally, the legislature has provided that the Board "may in its discretion" grant exceptions from the qualification requirements in those special circumstances which the Board deems appropriate. Section 21–2–304(a)(iii)(C) supra n.1.

We must therefore determine whether the above-referenced statutory provision contemplates a legislative intent to delegate to the Board of Education the power to enact and enforce rules and regulations governing the certification of professional educators within the state of Wyoming.

 In coming to a decision with respect to this question, we are mindful of the applicable rules of statutory construction. First off, it is a well-established principle that in construing a legislative enactment we must, if possible, ascertain the intent of the legislature from the wording of the statute. We are not, however, permitted to assign meaning to a statute which would have the effect of nullifying its operation. In the *Matter of the Injury to Hasser*, Wyo., 647 P.2d 66 (1982); *McGuire v. McGuire*, Wyo., 608 P.2d 1278, 1285 (1980). Also, words utilized in the statute are to be given their plain and ordinary meaning unless otherwise indicated. *Board of County Commissioners of the County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174, 1184 (1981); *Jahn v. Burns*, Wyo., 593 P.2d 828, 830 (1979). Similarly, it is well settled that

general principles of statutory construction calculated to assist the court in ascertaining legislative intent are not resorted to unless it can be said that the statute is ambiguous. *Sanches v. Sanches,* Wyo., 626 P.2d 61, 62 (1981); *Matter of North Laramie Land Co.,* Wyo., 605 P.2d 367, 373 (1980).

■ With these rules in mind, it is safe to say that the intent of the legislature as expressed in § 21–2–304(a)(iii) is to vest the State Board of Education with the power to adopt rules governing the certification of teachers and school administrators in Wyoming.[3] This observation cannot be disputed nor does the record reflect that the parties or the district judge contend otherwise. Rather, the essential question asks whether or not the State Board of Education is the final enforcer of the certification regulations adopted pursuant to the provisions of § 21–2–304(a)(iii). We hold that the Board is responsible for *all aspects* of certification of teachers and school administrators when a dispute over the applicable rules arises.

Although § 21–2–304(a)(iii) does not say in so many words that the State Board of Education is given the power to grant or deny certificates pursuant to regulations adopted by the Board, the only meaningful construction that can be given to the statute is to say that the legislature intended to vest the Board with that power. It would be anomalous to hold that § 21–2–304(a)(iii) gives the Board the power to adopt regulations and to authorize exceptions to them but does not grant the Board the final authority to apply those regulations to applicants seeking certificates which would

authorize them to accept employment as teachers or school administrators. For this court to hold that § 21–2–304(a)(iii) does not contemplate that the State Board of Education is the final arbiter in all certification disputes would have the effect of nullifying the operation of the statute—and that we cannot do. *In the Matter of the Injury to Hasser,* supra; *McGuire v. McGuire,* supra. We reiterate that in construing the intent expressed in § 21–2–304(a)(iii) we must consider the object and purpose sought to be accomplished. *Wyoming State Treasurer v. City of Casper,* Wyo., 551 P.2d 687, 697 (1976). Thus we find that the intent of the legislature was to establish a system of certification for qualified professional educators within the Wyoming public school system and to vest the control and administration of that system with the State Board of Education. This construction of § 21–2–304(a)(iii) is further supported by the fact that in § 21–2–305 W.S.1977,[4] the legislature has also given the State Board of Education the power to revoke or suspend certificates issued by the Department of Education of which department the Board is an integral part. Thus, when the statutes relating to the same subject are read together, it appears to this court that the legislature intended for the Board to be the final arbiter of all disputes involving certificates for professional educators. See: *Wyoming State Treasurer v. City of Casper,* supra; *Woolley v. State Highway Commission,* Wyo., 387 P.2d 667 (1963). We therefore reject the district court's contrary conclusion[5] and

---

3. In fact, the language of § 21–2–304(a)(iii) makes mandatory the adoption of rules and regulations for certifying educational personnel such as the appellee. As stated in § 21–1–102, W.S.1977 the word "shall" in the Wyoming Education Code "is used in an imperative sense" and § 21–2–304(a)(iii) provides that the Board "shall" adopt rules. See § 21–2–304(a)(iii) supra n.1.

4. § 21–2–305, W.S.1977 provides:
"(a) In addition to any other powers assigned to it by law, the state board may:
"(i) Revoke or suspend certificates issued by the department of education for incompetency, immorality, other reprehensible conduct, or gross neglect of duty, upon its own motion or upon the petition of any local board of trustees; provided, that no certificate shall be revoked or suspended without a hearing conducted as provided by law;
"(ii) Require such reports and other assistance from school boards and officials as it may from time to time deem necessary and advisable."

5. The district court erroneously decided that, pursuant to the provisions of § 21–2–202 W.S. 1977, the State Superintendent of Public Instruction was required to make a final determination on appellee Barber's application. Since we hold that § 21–2–304(a)(iii) vests such au-

hold that § 21–2–304(a)(iii) gives the State Board of Education final authority to decide all controversies over all certification matters for educational professionals who are required to be certified under § 21–7–303 W.S.1977.[6]

### DID THE STATE BOARD OF EDUCATION DENY APPELLEE DUE PROCESS OF LAW?

Acting pursuant to its authority outlined above, the State Board of Education promulgated Rules and Regulations Governing Teacher Certification in the Wyoming Public Schools. Incorporated therein is Section 10b, which describes the qualifications necessary for the granting of a certificate to act as a school district superintendent. These qualifications are the subject of the dispute in this case. Section 10b, as filed and approved by the Governor, provides:

"b. SUPERINTENDENT. The applicant shall satisfy all general regulations for eligibility and teacher certification and Education Specialist certification (pages 43–45 and 58). The applicant shall satisfy eligibility requirements for the School Principal endorsement. This endorsement applies to the chief administrator and the designated assistant superintendents. Within the context of all graduate work completed by the applicant (including the master's degree), a minimum of sixty (60) semester hours is required, of which thirty (30) semester hours shall be in the following areas:

"(1) School Administration;

"(2) Administration and Supervision of Elementary and Secondary Schools;

"(3) Elementary and Secondary Curriculum and Instruction;

"(4) Special Phases of Administration (courses selected from the following areas: Law, Advanced Finance, Facilities, Guidance, Community Relations, Person-

nel Management, Administration seminars or workshops on current trends).

"The applicant is required to have had three (3) years of teaching experience in a recognized school (K–12) setting."

By making the necessary cross-references in the rule, the credentials which Barber was required to exhibit in order to qualify to receive certification for the school district superintendent position were the following:

(1) Graduation from an accredited teacher-preparation program;

(2) Student-teaching field experience or three years of public school teaching within the last six years;

(3) Master's degree from an accredited institution;

(4) At least 60 semester hours of graduate course work;

(5) Thirty graduate hours in

(a) School Administration;

(b) Administration and Supervision of Elementary and Secondary Schools;

(c) Elementary and Secondary Curriculum and Instruction;

(d) Special Phases of Administration (courses selected from the following areas: Law, Advanced Finance, Facilities, Guidance, Community Relations, Personnel Management, Administration seminars and workshops on current trends).

(6) Three years of teaching experience in a recognized K–12 school setting.

As noted in the initial discussion of the facts, the Director of the Accreditation Services Unit denied Barber's application for certification because, in his opinion, Mr. Barber was deficient in several areas required by the rules. In addition, we have also noted that the Board initially denied the appellee's request for an exception as provided for by § 21–2–304(a)(iii)(C). After this preliminary response to Mr. Barber's application, the appellee, along with

---

thority in the State Board of Education, we reject this analysis.

**6.** § 21-7-303, W.S.1977 requires:

"*No person shall teach or supervise in a public school in this state and receive compensation therefor out of any public fund*

*who at the time of rendering such services is not a holder of or a candidate and qualified for a certificate issued or to be issued under the laws of this state and the rules and regulations of the state board of education.*" (Emphasis added.)

the School District petitioned the Board to hold a hearing. The petition was granted and an extensive hearing was held. After careful review of the evidence the hearing officer sent to the Board his Proposed Findings, Conclusions and Decision. This document incorporated the following findings and recommendation:

(1) The Rules of the Board correlate between the minimum qualifications necessary for serving as a school superintendent and they are similar to the requirements of other states.

(2) The appellee Barber did not graduate from an accredited teacher preparation program but rather was trained as an educational psychologist.

(3) Appellee failed to satisfy the student-teaching requirement and had not in the alternative taught in a classroom for three out of the last six years.

(4) Applicant fell far short of satisfying the requirement of three years teaching experience in a recognized K–12 setting.

(5) Applicant also failed to establish 30 hours of graduate course work in the areas designated by the rules.

(6) Considering applicant's deficiencies, that the initial finding of the Director be affirmed and that applicant be denied both certification and an exception to the requirements.

After this decision was communicated, the Board met to consider the case, having before it the hearing officer's proposal, proposals submitted by Barber, the School District, and the state, all applicable regulations and statutes, the entire transcript, exhibits, depositions, and evidence adduced at the hearing. The record reflects that the Board carefully considered the entire record and entered its Findings, Conclusions and Decision which in substantial part accepted the above proposal of the hearing officer. The Board ordered that both the application and request for exception be denied.

In their appeal to the district court the appellees contended that the Board had denied Barber due process because the individual members of the Board were not present at the hearing and because the Board had appointed an independent hearing examiner in violation of law. The district judge agreed with this position. In our opinion the Board of Education was acting well within its power in appointing an independent hearing officer, and appellee Barber was not denied due process by any of the procedures utilized.

The focal point of the due-process claim is the legislative directive found in § 9–4–112(a), W.S.1977. The statute provides:

"(a) Presiding officers generally.—If [not] otherwise authorized by law there shall preside at the taking of evidence in all contested cases (i) the statutory agency, or (ii) one (1) or more members of the body which comprises such agency, or *(iii) an employee of the agency or an employee of another agency designated by the agency to act as presiding officer.* The functions of all those presiding in contested cases shall be conducted in an impartial manner. Any such officer shall at any time withdraw if he deems himself disqualified, provided there are other qualified presiding officers available to act." (Emphasis added.)

The clear import of the section is that, in contested cases, the agency, one or more members of the agency, or an employee of the agency is required to preside at a contested-case hearing. The appellees allege, and the district court determined, that such language required the State Board of Education to be present as a body for the purposes of conducting the hearing in Dr. Barber's case and that such failure denied the appellee's due process of law. We, however, are of the opposite opinion and view the language utilized in subpart (iii) as permitting an agency, in given circumstances, to appoint an independent hearing officer to conduct a contested-case hearing.[7] We,

7. We are aware that the legislature in 1981 added a new subsection (e) to § 9–4–112 which specifically permits the appointment of hearing officers by an agency. This new subsection reads:

"(e) Administrative hearing officer.—When required by law an agency shall adopt rules

reach this conclusion because the Board, when it appointed the hearing officer, entered into a contract with him and he thereby became an "employee" of that agency. The statute, in unambiguous terms, permits an agency employee to preside at a hearing. We construe the language of § 9–4–112(a) so as to give effect to the concept that the main purpose of the statute is to insure that each contested-case hearing will be conducted in the fairest and most impartial manner. *Wyoming State Treasurer v. City of Casper,* supra.

■ It seems to be the appellee's position that adjudicatory action by an agency is, for some unexplained reason, violative of due process if the agency officials whose responsibility it is to make the ultimate decision are not present when the evidence is received. This contention was rejected long ago by the United States Supreme Court in *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) (Morgan I). In that case, it was established that deciding officers need not take evidence and all that is required is that they understand the evidence before rendering a decision. See: 3 Davis, Administrative Law Treatise, § 17:2, p. 280–281, (2nd Ed. 1980). The general rule is that due process is satisfied as long as the deciding officials understand and consider the evidence before rendering a decision. *White v. Board of Education,* 54 Haw. 10, 501 P.2d 358 (1972); *Matter of University of Kansas Faculty,* 2 Kan.App.2d 416, 581 P.2d 817 (1978); *Application of Puget Sound Pilots Association,* 63 Wash.2d 142, 385 P.2d 711 (1963); *Pettiford v. South Carolina State Board of Education,* 218 S.C. 322, 62 S.E.2d 780 (1950). The reason behind the rule is that in many circumstances, particularly with a body like Wyoming's State Board of Education, it is not possible for all members to be present at all proceedings at all times. Section 9–4–112(a) recognizes this fact and provides

for procedures to insure only that the most important of all of the aspects of agency adjudication is met—that being the requirement that the hearing be conducted in a fair, open, and impartial manner by unbiased officials. See: *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* Wyo., 549 P.2d 1161 (1976); *Fallon v. Wyoming State Board of Medical Examiners,* Wyo., 441 P.2d 322 (1968); *Lake De Smet Reservoir Company v. Kaufmann,* 75 Wyo. 87, 292 P.2d 482 (1956).

■ Here, the record reflects that at the time appellees requested a hearing the members of the State Board of Education had had substantial contact with the case and, in order to insure a full measure of fairness, they appointed an independent hearing officer to conduct the hearing.[8] The record also reflects that the hearing was conducted openly and fairly with each party being permitted to introduce evidence and to conduct direct examination and cross-examination over a three-day time span. Finally, the record plainly supports the fact that the Board met and carefully apprised itself of the contents of the hearing record before rendering its decision.[9] We therefore conclude that the appellee has been afforded his due-process rights in full measure.

## IS THE BOARD'S DECISION SUPPORTED BY SUBSTANTIAL EVIDENCE?

The final issue to be addressed is whether or not the State Board's decision to deny appellee Barber's certification is supported by substantial evidence.

Recently in *Spivey v. Lucky Mc Uranium Corp.,* Wyo., 636 P.2d 518 (1981) we reiterated established standards which guide our review of appeals from the decision of an administrative agency. In Spivey, we set

and regulations providing a procedure for the use and the selection of an administrative hearing officer. An agency shall not delegate the authority to make final decisions to an independent administrative hearing officer unless required by law."

8. The Board's Rules of Practice and Procedure specifically allowed for such action.

9. At the time the decision was rendered eight of the nine members of the Board were present. The quorum requirements of § 21–2–302, W.S. 1977 were more than satisfied.

out the rule discussed in *Board of Trustees of School District No. 4 v. Colwell*, Wyo., 611 P.2d 427, 428 (1980) as follows:

" 'For the purpose of reviewing the propriety of the district court's action, we will review the agency action as though the appeal were directly to this court from the agency. We are governed by the same rules of review as was the district court. * * * ' " 636 P.2d at 521.

■ Thus, the first rule to guide us in our review of the present claim is that we are not bound to accept any of the conclusions reached in the district court, but are obliged to review the appeal as though it came directly to this court from the agency. However, in exercising our review authority, we cannot substitute our judgment for that of the agency as long as the agency's findings are supported by substantial evidence. *Spivey v. Lucky Mc Uranium Corp.*, supra, 636 P.2d at 521; *Board of Trustees of School District No. 4 v. Colwell*, supra, 611 P.2d at 428; *Shenefield v. Sheridan County School District No. 1*, Wyo., 544 P.2d 870, 872 (1976). By "substantial evidence" we are referring to relevant evidence which a reasonable mind might accept as supporting the agency's conclusion, although it means more than a mere scintilla of evidence. *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, supra, 549 P.2d at 1178. Finally, in reviewing the agency's contested decision we are bound by the provisions of § 9–4–114(c), W.S.1977, 1982 Cum.Supp.[10] and must look at the entire record. *Spivey v. Lucky Mc Uranium Corp.*, supra, *Board of Trustees of School District No. 4 v. Colwell*, supra.

■ In applying these standards to this case we are satisfied that the decision reached by the State Board of Education to deny Dr. Barber's request for certification is supported by substantial evidence. The record plainly reflects and appellees do not contend otherwise, that Barber, although being a highly qualified educational psychologist, was not trained as a teacher, did not participate in student-teaching field experience, and had not taught for the required three years in a recognized K–12 setting. The record also reflects, as do several of our past cases, that the State Board of Education has generally required training and experience as a teacher as a prerequisite to acquiring a school administrator's certificate. See: *Seyfang v. Board of Trustees of Washakie County School District No. 1*, Wyo., 563 P.2d 1376 (1977); *State v. Hockett*, 61 Wyo. 145, 156 P.2d 299 (1945). Here, the applicant was deficient in several requirements pertaining to his training as a teacher and this alone is sufficient to support the Board's decision to deny the application. In addition, the record reflects that, in the past, exceptions to certification requirements have only been granted in circumstances where deficiencies in the applicant's qualifications could be cured in a short time. Here, no contention is made that Dr. Barber's credentials could be brought in line with the regulations in a timely manner. The only conclusion that we can reach is that the Board acted well

---

10. § 9 4 114(c), W.S.1977, 1982 Cum.Supp. provides:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations, or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) *Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.*" (Emphasis added.)

within its discretion in refusing to make an exception in Barber's case. In final analysis we can reach no other conclusion but that the Board of Education fairly applied the requirements of Section 10b, supra,[11] to Barber and their decision to deny him certification is supported by substantial evidence in the record.

## CONCLUSION

On the basis of the above, we hold that the State Board of Education acted within its statutory powers in denying appellee Barber's application for a certificate to act as school superintendent for Fremont County School District No. 25. The Board in no way acted unlawfully, illegally, or in violation of appellee's constitutional rights.

Reversed.

ROONEY, Justice, specially concurring, with whom RAPER, Justice, joins.

I concur in the result reached by the majority opinion inasmuch as appellee Barber (hereinafter referred to as "Barber") did not meet the "three (3) years of teaching experience in a recognized school (K–12) setting" requirement for the requested certification. However, I disagree with the majority holding that appellant Wyoming State Board of Education (hereinafter referred to as "Board"), rather than appellant Wyoming State Superintendent of Public Instruction (hereinafter referred to as "Superintendent") was the proper agency[1] to administer and enforce the laws and rules relative to certification of teachers and school administrators. The potential of cor-

rective legislation requires comment on some of the issues presented in this case and not fully addressed by the majority opinion, such as the appeal having become moot, the constitutionality of § 21–2–304(a)(iii), W.S.1977, and the lawfulness of the rules and regulations vis-a-vis the enabling statute.

## MOOT

Ordinarily, this case would be subject to dismissal as moot. Barber has left the state of Wyoming since this action was instituted. He is in the state of Indiana where he accepted employment as Director of the Center for Evaluation, Development and Research for Phi Delta Kappa. Another individual has been appointed to the position of superintendent involved in this appeal, and it is no longer available for Barber. An action involving the same parties and the same issues has been started in the United States District Court by Barber, who seeks damages resulting from the failure of appellant to certify him for the superintendent's position. In it, the unemployment attributed to appellant is limited to a time certain and past. It would seem that the issues in this case no longer exist as far as the parties are concerned and the relief here because of a change in factual circumstances.

"2. When pending appeal an event occurs which makes a determination of the question involved unnecessary the appeal should be dismissed. [Citations.]" *Northern Utilities, Inc. v. Public Service Commission of Wyoming,* Wyo., 620 P.2d 139, 140 (1980).

11. Several contentions were raised by the appellees and the district court that the rules, as applied by the Board, were illegal and unlawful because they were not reasonably related to the position of school district superintendent. In answering these contentions, we need only reiterate that § 21–2–304(a)(iii) clearly empowers the Board to adopt rules and regulations governing the qualifications necessary for acting as a school district superintendent and are clearly within the scope of the Board's authority to adopt. Thus not only were the rules and regulations as applied lawful, but we are also of the opinion that the record reflects no arbitrary action on the part of the Board in apply-

ing them to Dr. Barber. Furthermore, the legislature has seen fit to require in § 21–2–304(a)(iii) that a superintendent be first certified as a teacher and we are not in a position to say that such a requirement is unreasonable or arbitrary since the appellees have raised no challenge in that regard. Also, the testimony adduced at the hearing reflects that requiring superintendents to have teaching experience bears some relation to the position.

1. "Agency" is defined in the Wyoming Administrative Procedure Act to include a state board and a state officer. Section 9–4–101(a)(i), W.S. 1977.

The change in circumstances would make certification of Barber improper. Although there is no residence requirement for certification, the statutory and rule provisions relative thereto are premised on the intention of the applicant to teach or administer in the public schools of the state of Wyoming. Section 8 of the Rules and Regulations provides that:

> "An initial applicant for a Wyoming certificate shall provide a recommendation for certification from the preparing institution, signed by the designated official of that institution."

The "preparing institution" is not defined but logically refers to the institution by which applicant is to be employed. There is no longer an institution preparing to employ Barber, and the recommendation is not possible.

Nonetheless, I believe we should address the merits of this case for the reason that the decision will be pertinent to the proceeding in the United States District Court. That court could refer the issues there involved to this court for determination. Rule 11, W.R.A.P. We would then be addressing the same issues involved in this case. I believe these facts are sufficient for resolving the issues at this time. However, such action should not be considered precedent in cases involving the issue of mootness absent the United States District Court factor.

## CERTIFYING AUTHORITY

Whether the authority for certification of teachers and administrators is that of the Superintendent or of the Board is academic insofar as this case is concerned inasmuch as both denied certification to Barber for the same reasons. Should the issue become important in the United States District Court case or with reference to future legislation, my reasons to believe the authority is that of the Superintendent are as follows:

Section 21–2–202(a), W.S.1977, provides in part:

> "(a) In addition to any other duties assigned to him by law, the state superintendent shall:
>
> \* \* \* \* \* \*
>
> "(v) Except as otherwise provided by law, *decide controversies arising from or concerned with* the administration of the state school system, involving *rules, regulations,* orders, or directives *promulgated by* the state superintendent or the state department of education or *the state board of education* and in all such cases, his decision shall be and constitute the final administrative determination;" (Emphasis added.)

The emphasized portion of this statute reflects the imposition on the Superintendent of the duty to administer the certification rules and regulations promulgated by the Board.

The introductory language of the quoted subsection, i.e., "[e]xcept as otherwise provided by law," does not effect a change. Not only are there no exceptions provided by law, but the statutes reinforce the requirement that the Superintendent administer and enforce the certification rules. Section 21–2–304, W.S.1977, gives the Board the authority and duty to "*[p]rescribe* rules and regulations *for administering* the laws governing \* \* \* certification." (Emphasis added.) It does not bestow the certification or administrative tasks themselves to the Board.[2] In fact, such is bestowed upon the Superintendent by § 21–2–202(a)(iv), W.S. 1977. The Superintendent is there authorized and mandated to:

> "*Enforce* the provisions of this code and *the administrative rules and regulations*

---

2. The majority opinion states that the "statute declares that the State Board of Education shall *administer* the laws 'governing the certification of school administrators \* \* \*.'" (Emphasis in original.) It does not so declare. It directs the Board to "[p]rescribe rules and regulations *for administering*" (emphasis added) such laws. The difference is determinative. If the legislature had intended the Board to administer such laws, it would have worded the subsection as inaccurately stated by the majority opinion. The actual wording used reflects the intent to have the rules administered by the Superintendent—as stated in so many words in § 21–2–202(a)(v), W.S.1977.

*provided for in this code,* in accordance with procedures provided by law;" (Emphasis added.)

The rules and regulations provided for in the code are those relative to certification. It is also noted that the legislature gave the Board the duty to prescribe minimum standards for public schools relative to general education programs, site selection on construction of schools and evaluation and accreditation of the schools. See subsection (a)(i) of § 21–2–304, W.S.1977. In the following subsection (a)(ii), the legislature gave the Board authority to "enforce the rules and regulations adopted under the preceding subsection." However, similar authority was not given with reference to the next subsection concerning the rules and regulations to be prescribed by the Board "for administering the laws governing the certification of school administrators, teachers and other personnel." See § 21–2–304(a)(iii) quoted infra. Had the legislature intended the Board to both prescribe and enforce[3] the rules relative to certification, it would have said so in the same fashion as it did with reference to the rules on minimum standards for public school education, etc.

It must be remembered that the Board is statutorily created, whereas the office of the Superintendent of Public Instruction is a constitutional one. The constitution gives to the Superintendent "[t]he general supervision of the public schools," Art. 7, § 14, Wyoming Constitution. Statutorily, the Board was given the authority and duty to prescribe rules and regulations for certification of teachers and administrators, but the Superintendent was given the authority and duty to administer and enforce such rules and regulations.

The majority opinion disregards the plain language of the statutes which directs the Superintendent's decision to be "the final administrative determination" in controversies arising from rules and regulations promulgated by the Board of Education (see

§ 21–2–202(a)(v), supra), and encroaches on the power of the legislature to hold that the Board is the "final arbiter" in such controversies. Contrary to that said in the majority opinion, it is not only a common procedure to direct administration and enforcement of rules and regulations on officers and agencies having no part in the creating of such rules and regulations, but such is often the only practical method of operation. The present situation is an example. The Board of Education consists of nine members who serve on a part-time basis. It has no staff except as provided by the Superintendent through the Department of Education. There is no possible way for the Board to administer the rules and regulations promulgated by it. The Superintendent, with her staff, receives, reviews, processes and makes decisions relative to every application presented for certification—all pursuant to the rules and regulations promulgated by the Board. The Board simply cannot undertake the tasks assigned to it by the majority opinion. We have here an energetically contested case, but there are hundreds of routine cases. Each year the Superintendent handles hundreds of certification matters—rejecting, accepting, conditioning, and modifying the acceptance of applications therefor. Must these activities be turned over to the Board as a result of this decision?

## HEARING OFFICER

I agree with that said in the majority opinion with reference to the propriety of the use of a hearing officer in this case and with reference to the necessity for a consideration and appraisement of the evidence by the officer or agency making the determination. With reference to this obligation of such officer or agency, the court said in *Morgan v. United States,* 298 U.S. 468, 481–482, 56 S.Ct. 906, 912, 80 L.Ed. 1288 (1936), one of the cases cited in the majority opinion:

---

**3.** "Prescribe" means "[t]o lay down authoritatively as a guide, direction, or rule; to impose as a peremptory order; to dictate; to point, to direct; to give as a guide, direction, or rule of action; to give law," and "enforce" means "[t]o put into execution; to cause to take effect; to make effective; as, to enforce a particular law * * *." Black's Law Dictionary, 5th ed. 1979.

" * * * And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. That duty undoubtedly may be an onerous one, but the performance of it in a substantial manner is inseparable from the exercise of the important authority conferred."

Section 9–4–109, W.S.1977, directs the agency in making a decision in a contested case to "consider the whole record or any portion stipulated to by the parties." The Superintendent was thus obligated to review the entire record and to base her determination on that reflected therein.

It was suggested that the voluminous record in this case and the span between the time the Superintendent was directed to make a determination and the time she made the determination raise a question as to whether or not the Superintendent actually considered the record and evidence. Since this question was not resolved (as it was in *Morgan v. United States*, supra), it must be assumed that the Superintendent afforded proper consideration to the evidence. However, emphasis should be given to the necessity for the decision to be made by the responsible officer or agency and not by the hearing officer.

### CONSTITUTIONALITY OF § 21–2–304(a)(iii), W.S.1977

Section 21–2–304 provides in part:

"(a) In addition to any other duties assigned to it by law, the state board shall:

* * * * * *

"(iii) Prescribe rules and regulations for administering the laws governing the certification of school administrators, teachers and other personnel to require either examination in specified subjects, or the completion of courses in approved institutions, or both. The board shall provide for certification of teachers of the Arapahoe and Shoshoni languages. Rules and regulations shall require the following minimum qualifications, and such additional qualifications for professional training and a broad general education as the board may designate:

"(A) For teachers: a degree from an accredited college or university;

"(B) For administrators: qualification as a teacher, as provided in the preceding subsection plus appropriate experience as such teacher and additional training in educational administration;

"(C) Provided, further that the board may in its discretion make such exceptions as to both teachers and administrators as it deems necessary and proper in special circumstances;"

The district court found, and appellees contend, the statute to be overbroad, thus denying Barber due process of law. In a special concurrence, such as this, it is not useful to review all of the ramifications involved in the delegation of legislative powers to administrative agencies. 1 Am. Jur.2d Administrative Law, §§ 92 through 137 (1962); Davis Administrative Law, Delegation of Power, §§ 2.01 through 2.16 (1958). For the purposes of this special concurrence, the following observations are sufficient:

If subparagraph (C) of § 21–2–304(a)(iii) were given a liberal interpretation, it would conflict with the direction in (a)(iii) that certain minimum qualifications are required. The legislature cannot set up *minimum* requirements and then authorize an administrative agency to make exceptions to them. The minimum requirements would no longer be minimum. It is thus necessary to interpret the provisions of (a)(iii)(C) to be applicable only to those requirements set forth in the rules and regulations which are in addition to the minimum requirements set by statute.

Subsection (a)(iii) of the statute is not as artfully or precisely drawn as might be desired. A delegation of power is not clearly defined by setting forth *minimum* requirements of "appropriate experience" and of "additional training." A less vague and more ascertainable base for the *minimum* would be preferable. Minimum requirements for administrators without reference

to teacher requirements would avoid some of the problems found by the district court. See *Seyfang v. Board of Trustees of Washakie County School District No. 1*, Wyo., 563 P.2d 1376 (1977), which held a superintendent not to be a teacher under the teacher tenure law.

Nevertheless, the complexities of the certification area require flexibility in fashioning rules; and if the same are fashioned reasonably and not arbitrarily or capriciously, the power cannot be said to have been improperly delegated.

> " * * * It is * * * a fundamental postulate of administrative law that * * * [an agency] is possessed of only those powers expressly delegated by the Legislature, together with those powers required by necessary implication [citations]. Nevertheless, the absence of explicit statutory authorization need not be fatal to a given assertion of regulatory power by the * * * [agency]. For, as we have recognized previously, the Legislature on occasion broadly declares its will, specifying only the goals to be achieved and policies to be promoted, while leaving the implementation of a program to be worked out by an administrative body [citations]. In such cases, the sheer breadth of delegated authority precludes a precise demarcation of the line beyond which the agency may not tread. What is called for, rather, is a realistic appraisal of the particular situation to determine whether the administrative action reasonably promotes or transgresses the pronounced legislative judgment [citation]." *Consolidated Edison Company of New York, Inc. v. Public Service Commission*, 47 N.Y.2d 94, 102, 417 N.Y.S.2d 30, 33–34, 390 N.E.2d 749 (1979), reversed on other grounds 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980), and 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

Although it has shortcomings, the statute does sufficiently indicate the standards and policy within which the Board could act. Whether or not the Board exceeded the standards and policy is another question.

## PROPRIETY OF RULES AND REGULATIONS

The district court found, and appellees contend, that the rules and regulations were improper in several respects. The district court considered the rules and regulations to have added "so much as amounts to a change of the minimum requirements" set forth in the statute.

That which I said with reference to the constitutionality of the statute, supra, should be in mind when analyzing the propriety of the rules and regulations. If they are reasonably fashioned, are not arbitrary or capricious, and do not conflict with the minimum standards contained in the statute, they are proper.

The district court directed reciprocity to be granted to Barber on the basis of his Oregon certification. The rules and regulations do not provide for reciprocity although § 21–2–304(a) provides in part:

> "(a) In addition to any other duties assigned to it by law, the state board shall:

> \* \* \* \* \* \*

> "(iv) Prepare and maintain a list of approved institutions whose graduates may receive certificates and provide for the issuance of Wyoming certificates based upon certificates granted on other states;"

The Board has not complied with the legislative direction, but the evidence reflects that such would not be pertinent under the circumstances of this case. The certification program for Wyoming is founded on a different philosophy than that of Oregon, and reciprocity with Oregon would have been improbable if not impossible. Barber was denied certification in Illinois and he could not qualify in Kentucky as a superintendent.

It is also contended that the rules should have afforded Barber an opportunity to qualify through examination. Such, however, is not consistent with that specified in the statute. It requires certification by:

> " * * * either examination in specified subjects, or the completion of courses in

approved institutions, or both. * * * "
Section 21–2–304(a)(iii), W.S.1977.

The statutory direction is in the alternative.

The district court ruled that the Board could not use a private entity to design program standards and criteria in determining the adequacy of "an accredited teacher preparation program." The National Council of Accreditation of Teacher Education (hereinafter referred to as "NCATE") performs this service for Wyoming and many other states. The NCATE performs its function whether or not the state of Wyoming makes use of it. The state only adopts the criteria and standards together with the inspection apparatus relative thereto instead of undertaking the extensive task of inspection and review of the programs of the numerous colleges and universities. Similar use of the National Board of Fire Underwriters by the State Fire Marshal was approved in *Brinegar v. Clark*, Wyo., 371 P.2d 62 (1962).

The district court found, and appellees contend, that § 10b of the rules and regulations regarding certification went beyond that authorized by the statute and was unreasonable. Section 10b sets forth that necessary for superintendent certification. It requires satisfaction of general requirements for teacher certification, for education specialist and for principal. The majority opinion has set forth the specific § 10b requirements and has noted wherein he was found deficient. Although § 10b is duplication in some respects (e.g., master's degree *and* 60 graduate hours), as long as the minimum statutory requirements are not violated (e.g., "accredited teacher prep-

aration program" comes from an "accredited college or university"), and as long as the standards relative to "appropriate experience" and "additional training in educational administration" are reasonable and not arbitrary, § 10b cannot be said to be improper.

In reviewing the whole record (*Board of Trustees of School District No. 4, Big Horn County v. Colwell*, Wyo., 611 P.2d 427 (1980); § 9–4–114, W.S.1977, Cum.Supp. 1982), I do not find substantial evidence that Barber met the three-year teaching requirement of § 10b of the rules and regulations. A careful compilation of his teaching experience results in a conclusion that he had less than three years of such in a K–12 setting. The district court found, and appellees contend, that the requirement of at least three years' experience in a K–12 setting is unreasonable. To the contrary, experience in the classroom with resulting student and parent contact, with the practical classroom application of administrative directives, and with the attendant curricula and disciplinary problems is sufficient to find reasonable the three-year teaching requirement.

This being so, it is immaterial whether or not Barber met the other requirements. The Superintendent was justified in refusing to certify him.