# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 7

OCTOBER TERM, A.D. 2013

*January 16, 2014*

DARRYL WADSWORTH,

Appellant
(Petitioner),

v.

BOARD OF TRUSTEES OF LINCOLN
COUNTY SCHOOL DISTRICT
NUMBER TWO,

Appellee
(Respondent).

S-13-0029

*Appeal from the District Court of Lincoln County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Appellant:*
     Erin M. Kendall and Patrick E. Hacker of Hacker, Hacker & Kendall, P.C., Cheyenne, WY. Argument by Mr. Hacker.

*Representing Appellee:*
     Dennis W. Lancaster of Lancaster Law Offices, P.C., Afton, WY.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Lincoln County School District Number Two (the District) notified Darryl Wadsworth, a continuing contract teacher in the District, that his contract was to be terminated on grounds of insubordination, incompetence, and poor work performance. Wadsworth requested a hearing before an independent hearing officer, and following that hearing, the Board of Trustees of Lincoln County School District (the Board) issued an order accepting the hearing officer's recommendation and conclusion that good cause existed for the termination of Wadsworth's teaching contract. On appeal, Wadsworth contends that the Board's order was entered in violation of the Wyoming Administrative Procedure Act (APA) and Wadsworth's due process rights because some members of the Board did not attend the entire hearing or otherwise review all of the evidence submitted to the hearing officer. We affirm.

## ISSUES

[¶2]    Wadsworth presents the following issues for our review:

> 1.    Does it violate the Wyoming Administrative Procedure Act (APA) for the Lincoln County School District Number 2 Board of Trustees to fail to review all the evidence before making its decision in the termination hearing of Darryl Wadsworth?
> 2.    Does it violate due process for the Lincoln County School District Number 2 Board of Trustees to fail to review all the evidence before making its decision in the termination hearing of Darryl Wadsworth?
> 3.    Is the decision of the Board invalid because members of the board failed to review the complete record of the hearing, as required by Wyo. Stat. § 16-3-107(k)?
> 4.    Did the district court err in concluding that violations of due process and the APA were not prejudicial to [Wadsworth]?

## FACTS

[¶3]    The 2010-2011 school year was Wadsworth's tenth year working as a teacher at Star Valley High School in Afton, Wyoming. Wadsworth was a teacher in the Industrial Arts program and taught building construction, applied construction, woods, and cabinetry. In Wadsworth's applied construction class, Wadsworth would pick a construction project in the community, based on a bidding process, and under Wadsworth's supervision, the students would complete the project. On these projects, a contract would be entered into and the owner of the project would be responsible for the

1

cost of materials plus an agreed upon percentage of the costs, which would be paid to the District to support the program.

[¶4]   On September 13, 2010, Wadsworth was called to a meeting with the Star Valley High School principal, Shannon Harris, and the District superintendant, Jon Abrams, to discuss concerns they had with Wadsworth's work performance.  A number of the concerns discussed during the September meeting related to a concession stand/restroom project Wadsworth's applied construction class worked on during the 2009-2010 school year, which, because of deficiencies in work and a failure to timely complete the project, resulted in nearly $100,000.00 of unanticipated costs to the District.[1]  Other concerns discussed during the meeting included unsafe practices at applied construction worksites, low student enrollment in Wadsworth's classes, and Wadsworth's public airing of complaints regarding the District's administration while visiting a local barber shop.

[¶5]   Following the meeting on September 13, 2010, the District superintendent issued a memorandum summarizing the meeting, which memorandum is referred to throughout the record as the "FICA memo."[2]  The FICA memo directed Wadsworth to: 1) adhere to an earlier Board directive requiring students to wear hard hats and steel-toed boots, in addition to safety glasses, on construction projects, unless and until Wadsworth received Board approval of an alternative safety plan; 2) provide to Principal Harris or her designee a building timeline and schedule for any future applied construction project; 3) establish better oversight of finances on any future applied construction project to ensure an understanding of the money that will be made by the project and that the budget makes allowances for student safety equipment; 4) follow his chain of command to address concerns with District administration rather than publicly discussing such complaints; and 5) market his industrial arts classes to increase student enrollment.

[¶6]   On April 14, 2011, Wadsworth was called to a meeting with Principal Harris and her assistant principal, Homer Bennett, to discuss the FICA memo.  Principal Harris summarized the discussion during the meeting as follows:

> Homer Bennett and I met with Darryl Wadsworth on April 14, 2011 to follow-up on the FICA memo written by Supt. Abrams on September 13, 2010.  In that meeting I asked Darryl about his follow through on the things he had been asked to complete as outlined in the FICA memo.

---

[1]  The 2009-2010 project was a concession stand/restroom facility built on the Star Valley High School grounds.  The project differed from most previous projects of the applied construction class because it was not a residential project for a community member, but was instead a commercial project for the District itself.

[2]  The witnesses were unclear as to the words that make up the FICA acronym.

I asked if he had provided a building schedule to myself, or any of the principals regarding his current project? He said, "no". I asked if he had a contract for the current project? He said, "no". I asked if he had a set amount that they would earn on the current project? He said, "I don't know." I asked if there was a contract or any kind of agreement in place? He said that he had given a contract to Mr. Hansen but it was never filled out or signed by anyone. I then asked if he had provided a completion timeline and progress reports for the current project to myself or any other administrator? He said, "No, I did not." I then asked if the students had been wearing the required steel-toed boots and hard hats on the applied project this year. He said, "No, but they have worn safety glasses." I then asked him if he had a project lined up for the coming school year. He said, "No, but I am currently working on that." He went on to say that he was waiting to see how many sections of the applied class he would have for the coming year before deciding on how big of a project to take on and once those numbers were set he would get to work on pinning down a project. I then asked him what he had done to market his class? He indicated that he had talked to business owners, contractors, and kids in his classes to encourage them to take other classes he offered. When I asked if he had done anything to market his classes to the incoming ninth grade students he said that the counselors had invited him to prepare something or present but that he had not done anything because the counselors met with those students every hour or so over a couple of days and he couldn't be at the middle school that much.

When I asked what he expected when he had failed to do every single thing the memo outlined he said, "I don't know, I guess I expected that you as the building principal should have followed up on those things and reminded me." When I asked why he didn't comply with or respond to my e-mail, dated 9-10-10, which clearly stated that if he wanted the Board to re-consider the requirement for requiring hard hats and steel-toed boots in the applied class that he needed to give me a proposal and rationale. He indicated once again that I should have sent more than one e-mail and followed up with him.

When I asked why after having a conversation with the Supt. and myself in September, and receiving a FICA memo from the Supt. which he signed and returned, he didn't do any of the things that he had been asked to do or that were clearly spelled out in the memo. He indicated that the memo "flusterated him and he just put it out of his mind."

[¶7]    On April 14, 2011, during a regularly scheduled Board meeting, Superintendant Abrams met with the Board in executive session and presented his recommendation to terminate Wadsworth's teaching contract. The Board thereafter returned to its public meeting, and during the public portion of its meeting, the Board voted to accept the recommendation of Superintendant Abrams "to give termination notice pursuant to section 21-7-110 and 21-7-106 of Wyoming Statutes and to terminate the contract of Darryl Wadsworth."

[¶8]    On April 15, 2011, the District issued Wadsworth written notice of its intent to terminate his teaching contract, effective May 27, 2011. The District cited incompetence, unsatisfactory work performance, and insubordination as grounds for the termination of Wadsworth's teaching contract. More specifically, the District cited to Wadsworth's failure to comply with the requirements of the FICA memo, including: a failure to require his students to wear hard hats and steel-toed boots; a failure to market his classes to increase student enrollment; a failure to secure a construction project for his applied construction class for the 2011-2012 school year; a failure to provide a building timeline and schedule for his applied construction 2010-2011 project; and a failure to follow his chain of command to address concerns with the school administration rather than voicing those concerns publicly.

[¶9]    On April 22, 2011, Wadsworth timely requested a hearing before an independent hearing officer pursuant to Wyo. Stat. Ann. § 21-7-110. In keeping with the statute then in effect, the District and Wadsworth jointly selected a hearing officer, and an evidentiary hearing was scheduled for August 2-3, 2011.[3]

[¶10]  On July 28, 2011, Wadsworth filed a motion to void the termination proceedings or to continue the proceedings to allow for discovery related to Board bias and to voir dire the Board. Through this motion, Wadsworth asserted that the Board's consideration of Superintendant Abrams' recommendation to terminate Wadsworth's teaching contract before the notice was issued to Wadsworth tainted the Board and made it impossible for Wadsworth to have a fair hearing before an impartial decision maker. The hearing officer denied Wadsworth's motion to void or continue the proceedings, denied the

---

[3]  Wyo. Stat. Ann. § 21-7-110(c) was amended, effective July 1, 2012, to provide that the independent hearing officer would be a hearing officer provided through the Office of Administrative Hearings. *See* Wyo. Stat. Ann. § 21-7-110 (LexisNexis 2013).

motion to conduct discovery, and ruled that the request to voir dire the Board was premature and could be raised when the hearing officer forwarded his recommended decision to the Board.

[¶11] An evidentiary hearing was held before the hearing officer on August 2-3, 2011. On August 18, 2011, Wadsworth renewed his motion to void the termination proceedings and to voir dire the Board. On August 19, 2011, the hearing officer denied the motion to terminate proceedings but granted the motion to voir dire the Board prior to its deliberations on any recommended decision by the hearing officer.

[¶12] On August 19, 2011, the hearing officer issued a recommended decision through a twenty-two page document entitled Findings and Recommendation of the Hearing Officer. The hearing officer recommended that Wadsworth's teaching contract be terminated for insubordination. In so recommending, the hearing officer found that the evidence supported some of the District's alleged grounds of insubordination, but not all of them. The hearing officer further found that the evidence did not support the District's allegations of incompetence and poor work performance. The hearing officer explained his conclusions, in part:

> 7. Incompetence is ordinarily based upon deficiencies in a teacher's classroom teaching performance. Actions demonstrating incompetence may include a lack of knowledge of the applicable subject matter a teacher is required to teach, an inability of the teacher to impart knowledge effectively to the students, and an incapacity to perform the duties of a teacher. See, generally, 68 Am.Jur. 2d, *Schools*, § 211.
> 8. Mr. Wadsworth taught students effectively at Star Valley High School for 10 years. There is no evidence in this case that he was an incompetent teacher at any time, and, accordingly, the superintendant has failed to prove by a preponderance of the evidence that Mr. Wadsworth should be terminated for incompetence or unsatisfactory performance as a teacher.
> 9. The Wyoming Supreme Court has defined insubordination as "a constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." *Board of Trustees v. Colwell*, 611 P.2d 427, 434 (Wyo. 1980). The elements of insubordination are:
>> a. Persistent course of
>> b. willful defiance in
>> c. refusing to obey

5

d. a reasonable

e. direct or implied order or rules and regulations

f. given by or with proper authority.

. . . .

10. Based upon the elements of insubordination, the hearing officer finds that the superintendant has failed to prove by a preponderance of the evidence that the following matters constituted insubordination:

a. The so-called "barber shop" conversation, in which Mr. Wadsworth complained publicly about the school administration, may have been unwise or unprofessional, but, as a citizen, Mr. Wadsworth had a right to say the things he said, and they did not constitute insubordination.

b. Mr. Wadsworth's marketing of his classes to potential students may not have been everything that Ms. Harris or Mr. Abrams desired, but the evidence is that he made some reasonable efforts to recruit students and did not persistently and willfully refuse to market his classes. Mr. Wadsworth's conduct in this regard did not constitute insubordination.

11. Based upon the elements of insubordination, the hearing officer finds that the superintendant has proven by a preponderance of the evidence that the following matters constituted insubordination:

a. Mr. Wadsworth's persistent and willful pattern of disregarding the Board's directive that his applied construction students wear hard hats and steel-toed boots while working on construction projects. The Board had authority to give this directive, and Mr. Wadsworth did not have the discretion to substitute his judgment for the Board's in that regard. The directive was a reasonable attempt by the Board to safeguard the lives and health of students, and the Board provided funding for the safety equipment. The directive was clearly communicated to Mr. Wadsworth on multiple occasions. Mr. Wadsworth was given a reasonable opportunity to present information to the Board in order to obtain changes in the directive, but he did not do so, and therefore it was unreasonable for him to persistently disregard the directive. Mr. Wadsworth's

6

disregard of the Board's directive in this regard constituted insubordination.

b.      Mr. Wadsworth's failure to provided (sic) a building schedule for the 2010-11 Jerry Hansen construction project to Principal Harris or to any other school administrator. The problems that occurred on the 2009-10 concession/restroom project were not grounds for termination of Mr. Wadsworth's contract after the 2010-11 school year, but they provided a context within which specific directives were given to Mr. Wadsworth so that the 2009-10 problems would not be repeated. The September 13, 2010 letter provided Mr. Wadsworth with a reasonable opportunity to improve his performance with regard to the management of construction projects for the school district, but he failed to take advantage of that opportunity. The directive to provide a construction schedule for future projects was reasonable and was clearly communicated to Mr. Wadsworth. He persisted in persistently and willfully refusing to provide administrators with a construction schedule. He had no reasonable excuse for not doing so.

c.      Likewise, Mr. Wadsworth's failure to exercise better oversight over construction project finances by establishing a project budget in the context of a project contract constituted insubordination. The directive and its purpose were clearly communicated to Mr. Wadsworth, and he persistently and willfully failed to comply with the directive during the 2010-11 school year. The consequences of his failure to comply mirrored, to some extent, the financial consequences of the concession/restroom project of 2009-10, in that the school district realized no monies from the Jerry Hansen project and in fact incurred expenditures and lost money on the project.

12.     Mr. Wadsworth's insubordination in the above regard is corroborated by his testimony that he really did not view the directives as more than suggestions, and that he was "flustrated" by the September 13, 2010 letter and simply put it out of his mind. This demonstrated a willful disregard for reasonable directives given to him by those who had lawful authority over his conduct and job performance.

7

13.	The three circumstances of insubordination outlined above constitute good cause for termination of the teaching contract of Darryl Wadsworth, and the superintendant has met his burden of proving by a preponderance of the evidence that his recommendation for termination is proper under W.S. § 21-7-110(a).

[¶13] On August 26, 2011, Wadsworth filed his objections to the hearing officer's recommended decision, contending that the findings of insubordination were unsupported by the evidence. On August 30, 2011, the Board met in executive session to allow Wadsworth to voir dire the Board, to hear argument from Wadsworth and the District on the hearing officer's recommended decision, and to deliberate on the recommended decision. During the voir dire, it was revealed that not all Board members had reviewed the entire evidentiary record. Two Board members had listened to all of the testimony given at the hearing, either in person or on tape, while the other Board members participating in the deliberations and decision had listened to only parts of the testimony. Counsel for Wadsworth objected to the Board voting on the hearing officer's recommended decision before having reviewed the entire evidentiary record:

And I would indicate for purposes of the record, that, Mr. Copenhaver [Board Counsel], that one of our primary arguments is that the hearing officer made findings that are not supported by the evidence, and, therefore, it's necessary, if you're going to evaluate that decision, to look at the evidence. And if you don't do so, that, in my view, would be arbitrary and capricious. And they can take whatever advice they want to, but I want to be very clear what our position is.

[¶14] At the conclusion of the hearing, the Board voted to accept the recommendation of the hearing officer and to authorize the Board chairman to sign a written decision consistent with the Board's determination. Thereafter, on September 6, 2011, the Board issued its written decision and order. The Board's decision memorialized its acceptance of the hearing officer's recommendation, but it also further concluded that the hearing officer's findings of fact supported termination of Wadsworth's teaching contract on the ground of poor work performance. The Board's decision provided:

The Board accepts the Conclusions of Law as recommended by the independent hearing officer except as otherwise set forth below.
The Board specifically accepts the conclusion and recommendation of the independent hearing officer that there was established satisfactory evidence of insubordination by Wadsworth to support a recommendation for the termination

8

of his contract as noted in the Conclusions of Law recommended by the independent hearing officer.

The Board accepts the conclusion of the independent hearing officer that there was not sufficient evidence of incompetence to support a recommendation for the termination of Wadsworth's contract.

The hearing officer seems to have combined the separate legal bases for termination of unsatisfactory performance with incompetence. Unsatisfactory performance is a distinct, independent and separate legal basis for a recommendation of termination for incompetence. The Legislature added unsatisfactory performance as a reason for termination subsequent to having set forth incompetence as a statutory basis for termination and clearly intended for it to be a separate and distinct basis [from] incompetence. The Findings of Fact as made by the independent hearing officer which have been accepted by the Board of Trustees support a conclusion that Wadsworth's performance was unsatisfactory and constitutes a legal basis for the termination of his contract.

[¶15] Wadsworth filed a petition for review in district court, asserting as error the Board's consideration of the termination recommendation before the termination notice was issued to Wadsworth, the Board's meeting in executive session with counsel for the District before the termination notice was issued to Wadsworth, and the Board's failure to review the entire evidentiary record before making a decision to accept the hearing officer's recommended decision. The district court affirmed the Board's decision.

[¶16] Wadsworth timely filed his notice of appeal. On appeal to this Court, Wadsworth has limited his allegations of error to the Board's failure to review the entire evidentiary record before making its decision to accept the hearing officer's recommended decision.

## STANDARD OF REVIEW

[¶17] In an appeal from a district court's appellate review of an administrative decision, we review the case as if it came directly from the administrative body, affording no special deference to the district court's decision. *Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 28, ¶ 27, 297 P.3d 82, 89 (Wyo. 2013); *DeLoge v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 154, ¶ 5, 264 P.3d 28, 30 (Wyo. 2011). Our review of administrative decisions is in accordance with the Wyoming Administrative Procedure Act, which provides:

(c) To the extent necessary to make a decision and when

presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c)(ii) (LexisNexis 2013).

[¶18] Under this statute, we review an agency's findings of fact by applying the substantial evidence standard. *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 62, ¶ 8, 301 P.3d 137, 141 (Wyo. 2013); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). Substantial evidence means relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Jacobs*, ¶ 8, 301 P.3d at 141; *Bush v. State ex rel. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005). "'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings.'" *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011) (quoting *Bush*, ¶ 5, 120 P.3d at 179).

[¶19] The arbitrary and capricious standard of review is used as a "safety net" to catch agency action that prejudices a party's substantial rights or is contrary to the other review standards, but is not easily categorized to a particular standard. *Jacobs*, ¶ 9, 301 P.3d at 141. "The arbitrary and capricious standard applies if the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Id.* "'We review an agency's conclusions of law

*de novo,* and will affirm only if the agency's conclusions are in accordance with the law.'" *Kenyon*, ¶ 13, 247 P.3d at 849 (quoting *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010)).

## DISCUSSION

[¶20] Wadsworth contends that the Board's failure to independently review the entire evidentiary record before entering its decision terminating his teaching contract violated the Wyoming APA and violated his due process rights. We address each argument in turn.

## A.  Wyoming APA

[¶21] In dismissing Wadsworth, the Board exercised its statutory authority pursuant to Wyo. Stat. Ann. § 21-7-110, which, when Wadsworth received his April 2011 termination notice, provided in relevant part:

> (a) The board may suspend or dismiss any teacher or terminate any continuing contract teacher for incompetency, neglect of duty, immorality, insubordination, unsatisfactory performance or any other good or just cause.
>
> . . . .
>
> (c) Any continuing contract teacher receiving notice of a recommendation of termination under W.S. 21-7-106(a) or against whom dismissal or suspension proceedings are instituted *is entitled to a hearing before an independent hearing officer on the recommendation or the reasons for dismissal or suspension*, upon submission of a written request to the superintendent. …
>
> (d) … The hearing shall be conducted in accordance with the Wyoming Administrative Procedure Act and the hearing officer may accordingly receive or reject evidence and testimony, administer oaths and if necessary, subpoena witnesses. All school district records pertaining to the teacher shall be made available to the hearing officer.
>
> . . . .
>
> (g) *The board shall review the findings of fact and recommendation submitted by the hearing officer and within twenty (20) days after receipt, issue a written order to either terminate, suspend or dismiss the teacher, or to retain the teacher. If the board terminates, suspends or dismisses the teacher's employment over a recommendation by the hearing officer for retention, the written order of the board*

11

> *shall include a conclusion together with reasons supported*
> *by the record.*

Wyo. Stat. Ann. § 21-7-110 (LexisNexis 2011) (emphasis added).[4]

[¶22] Wadsworth acknowledges the statutory role of a hearing examiner in teacher contract termination proceedings, but he contends that the Wyoming APA imposes a separate duty on the Board to itself independently review the entire evidentiary record before acting on a hearing examiner's recommended decision. Specifically, Wadsworth cites to the following language in the Wyoming APA:

> *The agency shall consider the whole record* or any portion stipulated by the parties. In the event a recommended decision is rendered all parties shall be afforded a reasonable opportunity to file exceptions thereto which shall be deemed a part of the record. All parties as a matter of right shall be permitted to file a brief with the agency and oral argument shall be allowed in the discretion of the agency.

Wyo. Stat. Ann. § 16-3-109 (LexisNexis 2013) (emphasis added).

[¶23] Wadsworth's argument requires that we determine the meaning of sections 21-7-110 and 16-3-109 and how the two statutes operate together. In accordance with our rules of statutory interpretation, our primary goal must be to determine the legislature's intent. *Rock v. Lankford*, 2013 WY 61, ¶ 19, 301 P.3d 1075, 1080 (Wyo. 2013); *Redco Constr. v. Profile Props., LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 415 (Wyo. 2012). When reviewing statutes relating to the same subject or having the same general purpose, we must consider the statutes together and strive to construe them in harmony, *Rock*, ¶ 19, 301 P.3d at 1080, and we recognize that specific statutes control over general statutes dealing with the same subject. *Rock*, ¶ 37, 301 P.3d at 1085; *Gronberg v. Teton County Hous. Auth.*, 2011 WY 13, ¶ 45, 247 P.3d 35, 45 (Wyo. 2011); *Qwest Corp. v. PSC of Wyo.*, 2007 WY 97, ¶ 32, 161 P.3d 495, 503 (Wyo. 2007).

[¶24] Applying these rules of interpretation, we are unable to accept Wadsworth's argument that a school board is statutorily required to independently review the entire evidentiary record received by the hearing officer. Instead, we conclude that sections 21-7-110 and 16-3-109 read together require only that a school board review a hearing officer's findings of fact and conclusions of law, and any objections or exceptions thereto, before accepting a recommended decision.

---

[4] As noted earlier in this opinion, Wyo. Stat. Ann. § 21-7-110 was amended, effective July 1, 2012, with changes that included who would serve as the independent hearing officer and who would be responsible for the hearing officer's compensation. *See* Wyo. Stat. Ann. § 21-7-110 (LexisNexis 2013).

[¶25] We begin by considering the language of section 21-7-110, the provision that applies specifically to contested cases before a school board. By its plain terms, section 21-7-110 requires a school board to "review the findings of fact and recommendation submitted by the hearing officer and within twenty (20) days after receipt, issue a written order." Wyo. Stat. Ann. § 21-7-110(g) (LexisNexis 2013). It is only "if the board terminates, suspends or dismisses the teacher's employment over a recommendation by the hearing officer for retention," that a school board is required to go beyond the hearing officer's findings and recommendation and articulate its decision "with reasons supported by the record." *Id*. There is otherwise no language in the statute requiring a board to independently review the entire evidentiary record received by the hearing officer.

[¶26] We next consider then whether the Wyoming APA's more general requirement that an agency consider the whole record in deciding a contested case mandates the separate and independent evidentiary review urged by Wadsworth. We find that it does not. Although section 16-3-109 does require that an agency consider the whole record, it does not require by its plain terms that the record review be performed by the ultimate decision maker. Moreover, the APA's mandated consideration of the whole record is not inconsistent with the Board's specific statutory authorization to rule based on a hearing officer's findings of fact and recommendation. Section 21-7-110 specifies that a hearing officer presiding over a contested case in a teaching contract dispute will conduct the hearing in accordance with the Wyoming APA and will receive evidence from both the teacher and the superintendant. *See* Wyo. Stat. Ann. § 21-7-110(d)-(f). In other words, the hearing officer's recommended decision is statutorily required to be based on the whole record. Thus, when a school board adopts a hearing officer's recommended decision, it is in fact issuing an order based on consideration of the whole record.

[¶27] This reading of the Wyoming APA is consistent with the Act's purpose. We have observed:

> A basic purpose of the [Wyoming Administrative Procedure Act] is to assure that the controverted issues underlying such a proceeding ... will be fully developed and supported on the record by material and substantial evidence and upon which the agency, as the finder of fact, must adjudicate the matter. The objective, of course, is to avoid agency action upon an assumption of facts undisclosed by such evidence. Without reasonable adherence to that objective the contemplated safeguards of a direct and convenient court review, even though somewhat limited, would be frustrated.

*State ex rel. Wyo. Workers' Safety & Comp. Div. v. Carson*, 2011 WY 61, ¶ 14, 252 P.3d 929, 933 (Wyo. 2011) (quoting *Board of County Comm'rs v. Teton County Youth Servs.*, 652 P.2d 400, 413-14 (Wyo. 1982)).

[¶28]  When a school board enters a decision on a teacher contract dispute based on a hearing officer's consideration of the whole record, the above-identified objectives are met.  The findings and conclusions adopted by the board can be reviewed against the record to ensure they are supported by substantial evidence and to ensure that all material evidence was addressed by the decision.  *See Jacobs*, ¶ 8, 301 P.3d at 141 (substantial evidence standard applies to agency findings of fact); *Decker v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160, ¶ 27, 124 P.3d 686, 695 (Wyo. 2005) (agency decision must include findings showing agency carefully weighed all material evidence offered by parties).  Judicial review thus provides a safeguard to ensure that a school board's decision is based on consideration of the whole record, whether consideration of the record is completed by the school board itself or by a hearing officer appointed to perform the task.

[¶29]  Notably, Wadsworth does not challenge the Board's decision on the ground that it is unsupported by substantial evidence.  Nor does Wadsworth identify evidence that the Board's decision failed to address.  Instead, Wadsworth argues for different inferences and conclusions to be drawn from the evidence.  For example, Wadsworth argues that he "testified at the hearing that he did not view the items in the memo as a 'directive,' but rather as suggestions," and if he "did not view the items in the memo as directives, he obviously did not have the requisite state of mind to willfully defy or refuse to obey them."  With respect to this particular testimony, the findings and conclusions accepted by the Board included the following:

> [Finding of Fact No. 25]   The parties take differing views of the significance of the September 13, 2010 letter.  Superintendant Abrams testified that the letter provided Mr. Wadsworth with "a clear direction," that Mr. Wadsworth was expected to do the things outlined in the letter, and that Mr. Wadsworth's failure to comply with the letter's directives is the basis for the superintendent's recommendation that Mr. Wadsworth's teaching contract be terminated.  On the other hand, Mr. Wadsworth testified that he thought the letter was "a suggestion of things that had to be worked on.  These were things that were recommended."  He did not see the September 13, 2010 letter as a "pressing issue," or "as a contract or directive on things that had to happen this school year."  "It was never clear to me that these things had to happen," Mr. Wadsworth testified.
>
> . . . .

14

[Conclusion of Law No. 12] Mr. Wadsworth's insubordination in the above regard is corroborated by his testimony that he really did not view the directives as more than suggestions, and that he was "flustrated" by the September 13, 2010 letter and simply put it out of his mind. This demonstrated a willful disregard for reasonable directives given to him by those who had lawful authority over his conduct and job performance.

[¶30] The hearing officer, and the Board, through its adoption of the hearing officer's findings and conclusions, did consider Wadsworth's testimony, and, both the hearing officer and the Board rejected the inference Wadsworth argued should be drawn from his testimony. Wadsworth's argument on appeal thus does not identify a failure of the Board to consider the whole record. The argument is instead an invitation to this Court to substitute its judgment for that of the Board, something we have consistently declined to do. *See Workers' Comp. Claim v. State ex rel. Wyo. Med. Comm'n & Wyo. Workers' Safety & Comp. Div.*, 2011 WY 49, ¶ 16, 250 P.3d 1082, 1086 (Wyo. 2011) (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo. 2002)) ("If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal.").

[¶31] Any decision entered by a school board in a contested case must, as required by section 109 of the Wyoming APA, reflect that it is based on consideration of the entire record. Section 109 does not, however, impose a requirement that a school board personally and independently review the evidentiary record received by a hearing officer. We thus find no violation of the Wyoming APA in the Board's acceptance of the hearing officer's recommended decision without first independently reviewing the entire evidentiary record.

## B.    Due Process

[¶32] Wadsworth next contends that the Board violated his due process rights when it accepted the hearing officer's recommended decision without independently and personally reviewing the evidentiary record received by the hearing officer. We find no due process violation in the Board's action.

[¶33] This Court has observed the following with respect to due process protections:

> Due process is a flexible concept which calls for such procedural protections as the time, place, and circumstances demand. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542–43, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Wilson*

15

*v. Board of Indiana Employment Sec. Div.*, 270 Ind. 302, 309, 385 N.E.2d 438, 444 (1979), *cert. denied*, 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979). In order to determine the specific dictates of due process in a given situation, it is necessary to balance three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

*State v. Robbins*, 2011 WY 23, ¶ 13, 246 P.3d 864, 866 (Wyo. 2011).

[¶34] Wadsworth argues that in the context of a contested case hearing on his contract termination, due process demands that the school board either read or listen to the entire evidentiary record received by the hearing officer. In support of this argument, Wadsworth cites the United States Supreme Court decision in *Morgan v. United States*, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) and this Court's decision in *Wyoming State Dep't of Educ. v. Barber*, 649 P.2d 681 (Wyo. 1982). Neither decision mandates the independent record review urged by Wadsworth.

[¶35] In *Morgan*, the Supreme Court announced the following due process requirements for administrative decision making:

For the weight ascribed by the law to the findings—their conclusiveness when made within the sphere of the authority conferred—rests upon the assumption that the officer who makes the findings has addressed himself to the evidence, and upon that evidence has conscientiously reached the conclusions which he deems it to justify. That duty cannot be performed by one who has not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. The one who decides must hear.

This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument

16

may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. That duty undoubtedly may be an onerous one, but the performance of it in a substantial manner is inseparable from the exercise of the important authority conferred.

*Morgan*, 298 U.S. at 481-82, 56 S.Ct. at 912.

[¶36] Courts and other authorities have widely rejected the interpretation of *Morgan* asserted by Wadsworth. For example, the Second Circuit Court of Appeals has held that due process does not require an "administrative decision-maker in an appeal from a hearing officer recommendation to read (or listen to) the entire transcript (or tape recording) of the hearing before issuing an administratively final decision." *Yaretsky v. Blum*, 629 F.2d 817, 822 (2d Cir. 1980), *reversed on other grounds* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). In so ruling, the Second Circuit stated:

> Even the Morgan I case cannot be said to go as far as appellees would argue. As Professor Kenneth Culp Davis has written:
>
> > Since the only purpose of sifting and analyzing of evidence by subordinates is to save the time of the deciding officers, this necessarily means that deciding officers may "consider and appraise" the evidence by reading a summary or analysis prepared by subordinates. The Supreme Court thus did not require in the First Morgan case that deciding officers must read all the evidence or even that they must directly read any of it. The requirement has to do with personal understanding of the evidence, not with the mechanics by which the understanding is developed. In common practice, deciding officers develop their understanding of evidence not only through reports of subordinates but especially through summaries and explanations in briefs. . . .
>
> 2 Davis, Administrative Law s 11.03 at 44-45 (1958) (footnotes omitted).

17

*Yaretsky*, 629 F.2d at 823.

[¶37] Another court cited a similar scholarly treatise in rejecting an argument that all members of an administrative board must be present at the entire hearing during a contested case:

> There is no requirement that all members of the board be present at the entire hearing. As stated in Koch:
>
> Chief Justice Hughes in a classic case, *Morgan v. United States*, (*Morgan I*) [298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936)] pronounced that "the one who decides must hear." The statement pervades administrative law but it does not actually reflect the rule of *Morgan I* : "Instead, he used 'hear' in a nonaural sense, as meaning that the one who decides must give heed to the case and, directing his mind to it, must be the one who actually exercises the deciding function. The one who decides in form must be the one who decides in fact." According to the *Attorney General's Manual,* this interpretation was incorporated in the APA and hence the *Manual* said: "Nothing in the Act is intended to preclude agency heads from utilizing the services of agency employees as assistants for analysis and drafting [citing Morgan I]." Under this doctrine the agency head or appellate body need not even read the entire record.
>
> 1 C. Koch, *supra,* at § 6.78 (footnotes omitted).

*In re San Nicolas*, 1990 WL 291963, 1 N.M.I. 105, 111 (N.M.I. 1990).

[¶38] In addressing whether a foreign service officer had been discharged from his position in compliance with applicable regulations, the U.S. Supreme Court itself observed:

> We do not, of course, imply that the Regulations precluded the Secretary from discharging any individual without personally reading the 'complete file' and considering 'all the evidence.' No doubt the Secretary could delegate that duty. But nothing of the kind appears to have been done here.

*Service v. Dulles*, 354 U.S. 363, 387 n.40, 77 S.Ct. 1152, 1165, 1 L.Ed. 2d 1403 (1957); *see also Guerrero v. New Jersey*, 643 F.2d 148, 150 (3d Cir. 1981) (no due process violation where Board of Medical examiners revoked physician's license on basis of an

ALJ's report containing findings of fact and conclusions of law, written exceptions to report, and oral argument); *Megill v. Board of Regents*, 541 F.2d 1073, 1080 (5th Cir. 1976) (no due process requirement that each administrative board member "individually inspect every line of the record as compiled by the Board and the hearing examiner"); *Bates v. Sponberg*, 547 F.2d 325, 332 (6th Cir. 1976) (no violation of due process when decision-making body voted on appeal from an administrative adjudication without reading the transcript, relying on summary report); *Estate of Varian v. Commissioner*, 396 F.2d 753, 755 (9th Cir. 1968) (requirement that "the one who decides must hear … means simply that the officer who makes the findings must have considered the evidence or argument"); *Sheikh v. Med. Bd. of California*, 2010 WL 2793551, * 4 (E.D. Cal. 2010) (no due process requirement that deciding body personally read record before accepting ALJ's recommended decision to revoke physician's license); *Hawkins v. Board of Education*, 468 F.Supp. 201, 210 (D. Del. 1979) ("An administrator or Board may retain the decision-making authority and validly delegate to subordinates the responsibility of holding a hearing, analyzing the evidence, and making recommendations."); *City of Cedar Rapids v. Municipal Fire & Police Retirement Sys.*, 526 N.W.2d 284, 293 (Iowa 1995) (findings of fact and conclusions of law provided sufficient basis for full board to acquire "personal understanding" of evidence); *Crow v. Industrial Comm'n*, 140 P.2d 321, 322 (Utah 1943) (due process requirements met if decision maker has access to findings, conclusions, and oral or written report thereof).

[¶39]  This Court has itself not interpreted *Morgan* as imposing a mandate as onerous as the evidentiary record review that Wadsworth advocates.  In *Barber*, we rejected an argument that the ultimate administrative decision maker must be present during the evidentiary hearing, observing:

> It seems to be the appellee's position that adjudicatory action by an agency is, for some unexplained reason, violative of due process if the agency officials whose responsibility it is to make the ultimate decision are not present when the evidence is received. This contention was rejected long ago by the United States Supreme Court in *Morgan v. United States*, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) (Morgan I). In that case, it was established that **deciding officers need not take evidence and all that is required is that they understand the evidence before rendering a decision**. See: 3 Davis, Administrative Law Treatise, § 17:2, p. 280-281, (2nd Ed. 1980). **The general rule is that due process is satisfied as long as the deciding officials understand and consider the evidence before rendering a decision.** *White v. Board of Education*, 54 Haw. 10, 501 P.2d 358 (1972); *Matter of University of Kansas Faculty*, 2 Kan.App.2d 416, 581 P.2d 817 (1978); *Application of Puget*

> *Sound Pilots Association*, 63 Wash.2d 142, 385 P.2d 711
> (1963); *Pettiford v. South Carolina State Board of Education*,
> 218 S.C. 322, 62 S.E.2d 780 (1950).

*Barber*, 649 P.2d at 688 (emphasis added).

[¶40]  In *Barber,* the record reflected that the state board had in fact reviewed the entire evidentiary record before making its decision.  *Barber*, 649 P.2d at 687.  We can discern no reason, however, to deviate from the widespread authority holding that a decision maker's understanding of the evidence can, consistent with due process requirements, be gleaned from a hearing officer's findings of fact, conclusions of law, recommended decision, and any written or oral argument related thereto.  Indeed, at least three of the decisions this Court relied on in its *Barber* holding expressly recognized that the ultimate decision maker was not required to personally listen to or read all of the evidence before accepting a recommended decision.  *See In re University of Kansas Faculty*, 581 P.2d 817, 823 (Kan. Ct. App. 1978) ("In apprising itself of the evidence, the deciding authority is not precluded from obtaining the aid of competent assistants who may sift and analyze the evidence."); *White v. Bd. of Education*, 501 P.2d 358, 361-62 (Haw. 1972) (requirement that decision maker consider evidence satisfied by consideration of exceptions to proposed decision and oral argument thereon); *Pettiford v. South Carolina State Bd. of Educ.*, 62 S.E.2d 780, 789 (S. Carolina 1950) (evidence taken may be sifted and analyzed by competent subordinates).

[¶41]  We conclude our due process analysis by returning to our required balancing of Wadsworth's private interest at issue, the risk of an erroneous deprivation of that interest through the procedures used, and the Board's need to rely on the procedure used.  *See Robbins*, ¶ 13, 246 P.3d at 866.   In conducting this balancing, we are aided by this Court's decision in *Barber*.

[¶42]  In *Barber*, the Department of Education denied Barber's request for a school superintendent's certificate, which certificate was a prerequisite to Barber accepting a superintendent position in Fremont County.  *Barber*, 649 P.2d at 683.  Barber requested a hearing, and the board appointed a hearing officer to conduct a contested case hearing on Barber's request for a superintendant's certificate.  *Id*.  Following the hearing, the hearing officer submitted proposed findings and conclusions and recommended that Barber be denied the superintendant's certificate.  *Id*. at 683-84.  The board accepted the hearing officer's recommended decision.  *Id*. at 684.

[¶43]  On appeal, Barber argued that the board had denied him due process because the individual members of the board were not present at the hearing and because the board had appointed an independent hearing officer to conduct the hearing.  *Barber,* 649 P.2d at 687.  This Court rejected Barber's due process challenge, explaining:

The reason behind the rule is that in many circumstances, particularly with a body like Wyoming's State Board of Education, it is not possible for all members to be present at all proceedings at all times. Section 9-4-112(a) recognizes this fact and provides for procedures to insure only that the most important of all of the aspects of agency adjudication is met–that being the requirement that the hearing be conducted in a fair, open, and impartial manner by unbiased officials. See: *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, Wyo., 549 P.2d 1161 (1976); *Fallon v. Wyoming State Board of Medical Examiners*, Wyo., 441 P.2d 322 (1968); *Lake De Smet Reservoir Company v. Kaufmann*, 75 Wyo. 87, 292 P.2d 482 (1956).

*Barber*, 649 P.2d at 688.

[¶44] In balancing the due process factors in this case, we adhere to our reasoning in *Barber*. Wadsworth's private interest is similar to the private employment-related interest at issue in *Barber*. While we recognize that such a private interest is substantial, we conclude that the procedure used by the Board in this case adequately safeguarded Wadsworth's interest and did not violate his due process rights. The voting Board members indicated that they had reviewed the hearing officer's findings, conclusions and recommended decision, as well as Wadsworth's objections thereto. They also heard oral argument by Wadsworth. Wadsworth received notice of the basis for his contract termination, an opportunity to be heard before a neutral hearing officer, including the right to present evidence and cross-examine evidence against him, and ultimately an opportunity to be heard by the Board. We thus find no due process violation.

## CONCLUSION

[¶45] The Board did not violate the Wyoming APA or Wadsworth's due process rights by accepting the hearing officer's recommended decision without independently reviewing the entire evidentiary record received by the hearing officer. Affirmed.