2002 WY 82

George GRIFFIN, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., Wyoming DEPARTMENT OF TRANSPORTA-TION, Appellee (Respondent).

No. 01–80.

Supreme Court of Wyoming.

May 28, 2002.

R. Michael Vang of Kirkwood, Nelson & Vang, P.C., Laramie, WY, Representing Appellant.

Hoke H.M. MacMillan, Attorney General; Rowena L. Heckert, Deputy Attorney General; and Mary L. Loos, Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, and VOIGT, JJ., and BRACKLEY, D.J.

LEHMAN, Chief Justice.

[¶ 1] George Griffin (Griffin) seeks judicial review of an order of the Office of Administrative Hearings (OAH) upholding his implied consent suspension of his driver's license. The agency decision arose from a contested case hearing on October 27, 1999, and the suspension resulted from Griffin's refusal to submit to a chemical test in violation of Wyoming's Implied Consent Law, Wyo. Stat. Ann. §§ 31–6–101 through –108. The district court upheld the agency action, and this appeal followed. We find that (1) the testimony of the police officer in administering and assessing field sobriety tests provided sufficient foundation to admit the officer's testimony regarding such tests in an administrative proceeding; (2) the hearing examiner did not err by admitting the evidence; and (3) there was substantial evidence of probable cause to arrest Griffin for driving while under the influence of alcohol (DWUI). We affirm.

## ISSUES

[¶ 2] The parties are in agreement that the issues on appeal are:

1. Do standardized field sobriety tests utilized by the arresting officer require scientific or technical knowledge that require a proper foundation for their admission into evidence under W.R.E. 702 through 704?

2. Did the hearing examiner err by admitting and placing any significance on the standardized field sobriety maneuvers utilized by the arresting officer?

3. Was there sufficient admissible evidence to find that the arresting officer had probable cause to arrest the Petitioner for driving while under the influence of alcohol?

## FACTS

[¶ 3] At approximately 2:00 a.m. on July 3, 1999, Police Officer Hampton observed Griffin driving between sixty and seventy m.p.h. in a forty m.p.h. zone, and he observed the vehicle swerve and cross the center line. As a result, the officer stopped Griffin's vehicle. Upon contact, the officer observed that Griffin had watery and bloodshot eyes, slurred speech, and smelled of alcohol. When questioned, Griffin admitted to drinking two or three beers. The officer asked to see Griffin's driver's license, which he had a hard time locating, taking three attempts to get the license out of his wallet and hand it to the officer. When the officer returned the license, Griffin dropped it. The officer then asked Griffin to exit the vehicle so that field sobriety maneuvers could be performed. Griffin agreed.

[¶ 4] Griffin performed a number of maneuvers, the first of which was the horizontal gaze nystagmus (HGN) test. When questioned about his qualifications to administer the HGN, the officer testified that he had been a police officer for a little more than three years and had completed DWUI training at the police academy, as well as refresher courses following academy graduation. The officer stated that he estimates the forty-five degree angle used in conducting the HGN as recommended in the National Highway Traffic Administration (NHTSA) manual. After confirming that Griffin was neither ill nor on medication, the officer held a pen eighteen to twenty-four inches from Griffin's nose and told Griffin to follow the pen as he moved it from side to side. The officer observed the tracking of Griffin's eyes and noted that Griffin showed a lack of smooth pursuit and had nystagmus onset prior to forty-five degrees in both eyes, which is an indication of intoxication.

[¶ 5] The officer next asked Griffin to recite the alphabet. Griffin recited the alphabet correctly, but, when he got to Z, he became confused and said he did not remember what came after Z. The officer next asked Griffin to perform the Rhomberg test. The officer told Griffin to stand with his feet together, bend his knees slightly, put his head back, close his eyes, and count to thirty.

Griffin could not follow these directions and was confused about counting to thirty.

[¶ 6] The final maneuver Griffin was asked to perform was the walk and turn. The officer instructed Griffin on how to perform the maneuver, but he was confused and had to have the instructions repeated. When taking the first nine steps of the maneuver, Griffin appeared unsteady, and he missed the heel-to-toe requirement in four of the nine steps. Rather than continuing the maneuver, Griffin had to ask the officer what to do next. The officer told him to take a series of small steps so that he would be headed back in the direction from which he came, and then instructed Griffin to take nine steps heel to toe in that direction. Griffin began taking the small steps to turn around and, contrary to instructions, counted out those steps. Griffin then took nine steps towards the beginning point of the maneuver and missed the heel-to-toe requirement in five of the nine steps.

[¶ 7] The officer next asked Griffin to blow into an Alco-sensor, which is a small hand-held field unit that indicates if a person has been drinking. Griffin did not blow into the sensor as instructed. Based on his experience and observations, the officer decided that he had probable cause to arrest Griffin for DWUI. Following the arrest, Griffin was informed of the requirement for chemical testing and the consequences for refusal to submit to testing, according to the implied consent advisement required by statute. The officer asked Griffin to submit to a test of his blood or urine, as the breathalyser was out of service; Griffin refused.

[¶ 8] The Department of Transportation (Department) informed Griffin by letter dated July 12, 1999, that it intended to suspend his Wyoming driver's license and operating privileges based upon his refusal to submit to the required chemical testing of his blood, urine, or breath. The Department proposed an eighteen-month suspension because the certified record showed that Griffin had been convicted of a previous DWUI on June 1, 1998. This matter came before the Office of Administrative Hearings (OAH) on October 27, 1999. After the Office reviewed all of the evidence available to the officer at the time of Griffin's arrest, the OAH concluded that the

officer had probable cause to arrest Griffin, and the proposed eighteen-month suspension was upheld. The district court upheld the suspension, and this appeal followed.

## STANDARD OF REVIEW

■ [¶ 9] We accord no special deference to the district court's decision and will consider the case as if it came directly from the agency. *In re Jensen*, 2001 WY 51, ¶ 9, 24 P.3d 1133, ¶ 9 (Wyo.2001). Our review is limited to a determination of the factors specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001). The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

■ [¶ 10] "Absent evidentiary dispute, the standard of review for contested case hearings is simply stated as whether an agency's conclusions are in accordance with the law." *Parodi v. Dep't of Transp.*, 947 P.2d 1294, 1295 (Wyo.1997). We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *In re Jensen*, ¶ 10. In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. *Id.* If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence that a reasonable mind might accept in support of the agency's conclusion, so long as there is more than a scintilla of evidence. *Id.* Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, the reviewing court can discern a rational premise for those findings. *World Mart, Inc. v. Ditsch*, 855 P.2d 1228,

1236 (Wyo.1993) (quoting *Mekss v. Wyoming Girls' School*, 813 P.2d 185, 200 (Wyo.1991), *cert. denied* 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992)).

## DISCUSSION

### Proper Foundation

■ [¶ 11] The first query is whether standardized field sobriety tests utilized by an arresting officer require scientific or technical knowledge that require a proper foundation for their admission into evidence under W.R.E. 702 through 704. However, W.R.E. 702 through 704 do not apply to administrative hearings. While scientific and technical evidence admissibility in a judicial proceeding is governed by W.R.E. 702 and the four-part Daubert test, administrative hearings are governed by the Wyoming Administrative Procedure Act (WAPA). *See Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Administrative agencies acting in a judicial or quasi judicial capacity are not bound by the rules of evidence that govern trials by courts or juries. *Smith v. State ex rel. Dep't of Transp.*, 11 P.3d 931, 934 (Wyo.2000). The WAPA, Wyo. Stat. Ann. §§ 16–3–101 to –115, sets the broad standard for admissibility of evidence at an administrative hearing: The evidence must be of the type that is "commonly relied upon by reasonably prudent men in the conduct of their serious affairs." § 16–3–108(a).

■ [¶ 12] This court recently articulated the rule of admissibility of field sobriety tests as follows: "If the evidence establishes the tests were properly administered by a qualified person, the foundation is sufficient for admission in an administrative hearing." *Smith*, 11 P.3d at 935. Given this rule of law, we analyze whether the police officer in the instant case was qualified to administer the field sobriety tests. The officer testified that he had a little more than three years of law enforcement experience; that he received additional certification; that he received training for the tests conducted on Griffin based on the NHSTA from the Wyoming Law Enforcement Academy; and that he had received additional instruction in this area from the Rawlins Police Department.

Additionally, the officer testified that he did not look at each of the field maneuvers in isolation and did not relate Griffin's failure of them to any particular alcohol concentration.

[¶ 13] The officer's qualifications in the instant case are similar to those expressed in *Smith*, 11 P.3d at 936, wherein this court found the testing officer qualified to perform the field sobriety tests. There is sufficient evidence in the record to conclude that the officer conducted the testing and assessment in substantial accordance with his training. The officer testified how the tests were to be administered and how he administered the tests to Griffin. He also explained the manner in which he determined the results of the test. This evidence was sufficient for the agency to conclude that the officer was adequately trained in the administration and assessment of the field sobriety tests, and the foundation was sufficient for admittance of the evidence.

### Admitting Evidence

[¶ 14] The second issue is whether the hearing examiner erred in admitting test evidence and placing significance on the standardized field sobriety tests. Whether the hearing officer erred is reviewed under an abuse of discretion standard. This court recently described the standard of an abuse of discretion as "reaching the question of reasonableness of the choice made by the trial court [agency]." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). "Judicial discretion is a composite off many things, among which are conclusions drawn from objective criteria; it means [exercising] sound judgment ... with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of the witnesses. *City of Casper v. Utech*, 895 P.2d 449, 451 (Wyo.1995). The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873, 875 (Wyo.1994).

[¶ 15] This court has permitted a hearing examiner to rely on field sobriety tests in addition to the officer's personal observations to determine whether the officer had probable cause during a DWUI stop. *Nellis v. Dep't of Transp.*, 932 P.2d 741, 744 (Wyo. 1997). The field sobriety test results are the type of evidence commonly relied on by reasonably prudent men in the conduct of their serious affairs. *Smith*, 11 P.3d at 935. We have found that proper foundation was laid as to the techniques used and the officer's qualifications, and conclude that the hearing officer did not abuse his discretion in admitting and placing significance on the standardized field sobriety maneuvers utilized by the arresting officer.

### Probable Cause for Arrest

[¶ 16] The final issue is whether the officer had probable cause to arrest Griffin for DWUI.

> [W]e do not disturb the decision of the hearing examiner unless a claimant ... can demonstrate that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This rule affords the petitioner the opportunity to show that the findings of fact were contrary to the overwhelming weight of the evidence. **When an agency's action or decision is "based on a consideration of relevant factors and is rational," we will not rule that the action or decision is arbitrary or capricious.**

*Helm v. State ex rel. Workers' Safety & Compensation Div.*, 982 P.2d 1236, 1240–41 (Wyo.1999) (emphasis added and footnote omitted) (quoting *Mortgage Guaranty Ins. Corp. v. Langdon*, 634 P.2d 509, 520 (Wyo. 1981)).

[¶ 17] Based on his experience and observation, Officer Hampton decided he had probable cause to arrest Griffin. The officer observed Griffin speeding and crossing the road's center line. He had watery and bloodshot eyes and smelled of alcohol. When asked, Griffin admitted to drinking that evening. The officer asked to see Griffin's driver's license, which he had a hard time locating, taking three attempts to get the license out of his wallet and handing it to the officer. When the officer returned the license, Griffin

dropped it. After exiting his vehicle and during the field sobriety maneuvers, Griffin was confused, his speech slurred, and his balance unsteady. Prior to performing the HGN maneuver, Griffin was unable to reach out and touch the tip of the officer's pen. He touched the middle of the pen instead. Griffin also failed to successfully complete any of the field sobriety maneuvers. Consistent with the evidence, the hearing examiner concluded that probable cause existed for arrest. The circumstances in this case justified a reasonable person to conclude that Griffin was intoxicated to the point that his ability to drive was impaired.

## CONCLUSION

[¶ 18] This court finds that proper foundation was established for admitting the field sobriety tests and results utilized by Officer Hampton in determining probable cause. The court further concludes that even without the field sobriety tests, the record shows sufficient evidence to prove probable cause that Griffin had been driving upon a public street in violation of Wyo. Stat. Ann. § 31–5–233(b) (LexisNexis 2001). The Order of the administrative hearing agency is affirmed.