# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 78

APRIL TERM, A.D. 2021

June 23, 2021

REBECCA PAINTER, M.D.,

Appellant
(Petitioner),

v.

THOR HALLINGBYE, M.D., ex rel.
WYOMING BOARD OF MEDICINE,

Appellee
(Respondent).

THOR HALLINGBYE, M.D., ex rel.
WYOMING BOARD OF MEDICINE,

Appellant
(Respondent),

v.

REBECCA PAINTER, M.D.,

Appellee
(Petitioner).

S-20-0240, S-20-0241

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Rebecca Painter, M.D.:*
    Stephen H. Kline, Kline Law Office, P.C., Cheyenne, Wyoming.

*Representing Thor Hallingbye, M.D., ex rel. Wyoming Board of Medicine:*
    William G. Hibbler, Bill G. Hibbler, PC, Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   The Wyoming Board of Medicine (Board) suspended Dr. Rebecca Painter's license for five years after it found that she had exploited her professional relationship with an elderly patient and the patient's family, and improperly terminated the physician-patient relationship.  The matter began in 2014, when the patient's relatives complained to the Board.  After conducting an investigation, the Board appointed two members (Petitioners) to file a Complaint and Petition alleging Dr. Painter had violated various provisions of the Wyoming Medical Practice Act (MPA), Wyo. Stat. Ann. §§ 33-26-101 through -703.  In 2017, after a contested case hearing, which only two of the Board members attended in person, the Board suspended Dr. Painter's license, and it assessed costs and fees against her, including attorney fees and the hearing officer fees.  Dr. Painter appealed to the district court, which reversed in part and affirmed in part.  Both parties appealed, and we affirm.

## ISSUES

[¶2]   Dr. Painter raises three issues which we rephrase as:

  I.   Were Dr. Painter's due process rights violated because four of the six Board members did not attend the contested case hearing in person?

  II.  Did the Board act arbitrarily, capriciously, and contrary to law when it applied a presumption of undue influence to Dr. Painter and relied on legal authority beyond the Medical Practice Act to support its conclusion?

  III. Is there sufficient evidence to support the Board's finding that Dr. Painter improperly terminated the physician/patient relationship?

We rephrase and consolidate Petitioner's issue as:

  IV.  Did the Board exceed its statutory authority by passing a rule that redefines "costs" to include certain legal fees, and by assessing half of those fees against Dr. Painter in her disciplinary proceeding?

## FACTS

[¶3]   The Patient inherited the family ranch outside of Gillette, Wyoming, to the exclusion of her two sisters.  While the family understood the Patient was sole owner of the ranch, they continued to refer to it as the "family ranch."  The Patient never married

1

or had children and intended to leave the ranch to her sisters or their heirs. In 1996, the Patient employed Frank Stevens to assist with her estate planning. She established a trust which held the ranch and all her property. The Patient was both trustee and trustor. She did not allow the family to see the estate plan and trust documents until September 2014, four months before she died.

[¶4] The Patient established a close friendship with Dr. Painter, and in 2008, the Patient asked Dr. Painter to be the successor trustee and executor of her trust. Dr. Painter agreed. Eventually, Dr. Painter became co-trustee and helped the Patient manage her money. The Patient began paying Dr. Painter $60 per hour or $300 per month for the time spent managing the Patient's finances. All told, excluding payments for medical care, Dr. Painter paid herself $42,725 from the Patient's checking account.

[¶5] Meanwhile, the Patient's family became suspicious of Dr. Painter and relations between them grew contentious. Eventually, the Patient's niece filed a complaint with the Board of Medicine because she was concerned about the relationship between her aunt and Dr. Painter and feared that the Patient might leave the ranch to Dr. Painter. As the Board initiated its investigation, the Patient's health deteriorated and she moved to Pioneer Manor, a residential nursing facility in Gillette. When the Patient's ranch managers quit on short notice, Dr. Painter suggested her son-in-law, and the Patient hired him to manage the ranch, paying him approximately $3,000 per month.

[¶6] The Board prosecutor, Board investigator, and the Patient's niece and nephew interviewed the Patient at Pioneer Manor about her relationship with Dr. Painter.[1] The Patient remained steadfast in her support of Dr. Painter and her desire to compensate her for the financial management assistance. There is no dispute the Patient remained competent until her death. In response to the Board's concerns, Dr. Painter had a member of her staff hand-deliver a letter terminating the physician-patient relationship, stating the Pioneer Manor physician had assumed care of the Patient. The Patient died in January 2015. Dr. Painter, in her role as trustee, worked to wrap up the estate and distribute its assets to the beneficiaries. Eventually, Dr. Painter and the Patient's family reached an agreement which provided that the trust paid Dr. Painter $35,000 for the unpaid financial management services she provided before the Patient's death, and the heirs inherited the "family ranch" free and clear.

[¶7] The Petitioner[2] filed four counts against Dr. Painter, each containing multiple alleged violations. The Board held a six-day contested case hearing presided over by an Office of Administrative Hearings (OAH) hearing examiner. Two Board members attended the entire hearing in person. The hearing was videotaped and every Board

---

[1] Mr. Stevens, the Patient's attorney, was not present as the Board had not notified him of the interview.
[2] Thor Hallingbye, M.D., was substituted as Petitioner when the original Petitioners retired from the Board.

2

member was provided a copy of the entire record including the videos, transcripts, and exhibits. In a 275-page order, the Board found Dr. Painter exploited the Patient and the Patient's family, and improperly terminated the physician-patient relationship. The Board immediately suspended Dr. Painter's license for five years; ordered her to pay $78,526.69, which was one half of the costs associated with the hearing and included fees for the Board's prosecuting attorney and OAH hearing officer; and ordered her to pay a $15,000 fine.[3]

[¶8]　Dr. Painter appealed to the district court. The district court affirmed some violations, reversed others, and remanded for a determination of costs because it found the fee assessment unauthorized by law. Both parties appealed to this Court. *Painter v. McGill ex rel. Wyo. Bd. of Med.*, 2019 WY 108, 450 P.3d 1243 (Wyo. 2019) (*Painter II*). We dismissed the appeal because the order appealed from was not a final appealable order. *Id*. at ¶ 21, 450 P.3d at 1248. The Board addressed the issues remanded by the district court, again assessed half the Board's costs, including the prosecutor and hearing officer fees, against Dr. Painter, and the parties again appealed to the district court. In a thoughtful and thorough order, the district court dismissed parts of Count I and two other counts entirely. The Board of Medicine did not raise those dismissals in this appeal. The violations remaining after the district court's order are:

- Count I: Exploitive and Improper Conduct Toward the Patient under § 33-26-402(a)(vii) as defined in § 33-26-102(a)(xiii)(C) (now under § 33-26-402(a)(xxxv)): "Any behavior by a licensee toward a patient, former patient, another licensee, an employee of a health care facility, an employee of the licensee or a relative or guardian of a patient that exploits the position of trust, knowledge, emotions or influence of the licensee"[4], and § 33-26-402(a)(x)— "[v]iolating or attempting to violate or assist in the violation of any provision of this chapter or any other applicable provision of law;" and

---

[3] The Board sent Dr. Painter a letter on July 17, 2017, immediately suspending her license because it believed her continued possession of a license posed a danger to the public and indicating a written order would follow. The Board did not issue its written Findings of Fact and Conclusions of Law until October 21, 2017, which delayed Dr. Painter's ability to appeal the decision by three months. Though Dr. Painter raised this issue in *Painter v. McGill ex rel. Wyo. Bd. of Med.*, 2019 WY 108, 450 P.3d 1243 (Wyo. 2019) (*Painter II*), she abandoned it in this appeal.

[4] At the time the Petitioner brought charges against Dr. Painter, "exploitive conduct" was categorized under "sexual misconduct" in the MPA. The legislature has since changed the statute and exploitation is under Wyo. Stat. Ann. § 33-26-402(a)(xxxv). There are no allegations or evidence of sexual misconduct in this case.

3

- Count IV: Improper Attempt to Terminate the Physician/Patient Relationship under § 33-26-402(a)(xxvii)(N)—"[i]mproperly terminating a physician-patient relationship," and § 33-26-402(a)(xxxi)—"[v]iolation of any board rule or regulation."

[¶9] The district court reversed the Board's assessed fees and affirmed all other costs.[5] Both parties appealed.

## STANDARD OF REVIEW

[¶10] We review an appeal from the district court's review of an administrative agency's decision as if it had come directly from the agency and give no deference to the district court's decision. *Mirich v. State ex rel. Bd. of Tr. of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 15, 481 P.3d 627, 632 (Wyo. 2021) (citing *Sweetwater Cnty. Sch. Dist. No. One v. Goetz*, 2017 WY 91, ¶ 23, 399 P.3d 1231, 1235 (Wyo. 2017)). Wyoming Statute § 16-3-114(c) provides:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>>> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>>> (B) Contrary to constitutional right, power, privilege or immunity;

---

[5] Petitioner raises the issue of its salaries and per diems, which Dr. Painter included in her appeal to the district court, however, the district court apparently affirmed those costs, therefore we will not address them. The "Board's award of costs is reversed as to the award of one-half of the attorney's fees and hearing officer fees and affirmed in all other respects." (Emphasis omitted.)

4

> (C)   In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> (D)   Without observance of procedure required by law; or
> (E)   Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2019). "We review an agency's conclusions of law de novo." *Hayse v. Wyo. Bd. of Coroner Standards*, 2020 WY 4, ¶ 4, 455 P.3d 267, 270 (Wyo. 2020) (citing *Casiano v. State ex rel. Wyo. Dep't of Transp.*, 2019 WY 16, ¶ 8, 434 P.3d 116, 120 (Wyo. 2019)).

[¶11]   When both parties submit evidence at the contested case hearing, we apply the substantial evidence standard of review. *Mirich*, 2021 WY 32, ¶ 16, 481 P.3d at 632. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Exaro Energy III, LLC v. Wyo. Oil & Gas Conservation Comm'n*, 2020 WY 8, ¶ 10, 455 P.3d 1243, 1248 (Wyo. 2020) (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 11, 188 P.3d 554, 558 (Wyo. 2008)). We cannot substitute our judgment for the agency's if its decision is supported by substantial evidence. *Exaro Energy III*, 2020 WY 8, ¶ 10, 455 P.3d at 1248. "Because the agency, as the trier of fact, weighs the evidence and determines witness credibility, we defer to its factual findings unless they are 'clearly contrary to the overwhelming weight of the evidence on the record.'" *Mirich*, 2021 WY 32, ¶ 16, 481 P.3d at 633 (quoting *Exaro Energy III*, 2020 WY 8, ¶ 10, 455 P.3d at 1248). Thus, our review turns on whether the agency could reasonably conclude as it did, based on the evidence before it—not whether we agree with the outcome. *Mirich*, 2021 WY 32, ¶ 16, 481 P.3d at 633 (citing *Dale*, 2008 WY 84, ¶ 22, 188 P.3d at 561).

## DISCUSSION

### I.   The Contested Case Hearing Procedure Did Not Violate Dr. Painter's Due Process Rights

[¶12]   Dr. Painter argues the procedure for the contested case hearing violated her due process rights because four of the six Board members did not attend the hearing in person. She argues there is no record of what the Board reviewed or any requirement that they review all the evidence before reaching a conclusion. She points to the statutory authorization to appoint temporary Board members, at Wyo. Stat. Ann. § 33-26-201(f), as evidence of an intent to require all members to attend in person.

[¶13]   Dr. Painter argues that the Board and the district court failed to apply the balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47

5

L.Ed.2d 18 (1976), and if it had, it would have found the contested case hearing procedure violated her due process rights. We have described that test as:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Wadsworth v. Bd. of Tr. of Lincoln Cnty. Sch. Dist. No. Two*, 2014 WY 7, ¶ 33, 316 P.3d 541, 551 (Wyo. 2014) (quoting *State, Dep't of Transp. v. Robbins*, 2011 WY 23, ¶ 13, 246 P.3d 864, 866 (Wyo. 2011)). Petitioner asserts that, while the Board did not apply the *Wadsworth* test, the process used in Dr. Painter's hearing satisfies the elements.

[¶14] This Court has previously addressed whether due process is violated when members of the Board are absent from hearings. In *Wadsworth*, a terminated teacher argued the school board of trustees "violated his due process rights when it accepted the hearing officer's recommended decision without independently and personally reviewing the evidentiary record received by the hearing officer." 2014 WY 7, ¶ 32, 316 P.3d at 551. This Court undertook an extensive analysis of due process in administrative hearings, applying the *Mathews* balancing test. *Id*. at ¶¶ 41-44, 316 P.3d at 554-55. We determined there was "no reason . . . to deviate from the widespread authority holding that a decision maker's understanding of the evidence can, consistent with due process requirements, be gleaned from a hearing officer's findings of fact, conclusions of law, recommended decision, and any written or oral argument related thereto." *Id*. at ¶ 40, 316 P.3d at 554. We concluded there was no due process violation because Mr. Wadsworth received notice of his termination, had an opportunity to be heard by a neutral hearing officer, the right to present evidence, cross-examine witnesses against him, and be heard by the board. *Id.* at ¶ 44, 316 P.3d at 554-55.

[¶15] In *Wyoming State Department of Education v. Barber*, an applicant was denied superintendent certification by the State Board of Education. 649 P.2d 681, 683 (Wyo. 1982). Barber argued that the agency violated due process because the officials responsible for making the decision were not present at the hearing. *Id*. at 688. We applied the rule from *Morgan v. United States*, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936), which held that "deciding officers need not take evidence and all that is required is that they understand the evidence before rendering a decision." *Barber*, 649 P.2d at 688. We determined Mr. Barber was afforded due process because the members of the State Board of Education had substantial contact with the case, appointed an independent hearing officer to conduct the hearing, the hearing was open and fair, each party was able

to introduce evidence, conduct direct and cross-examination of witnesses, and the Board met and apprised itself of the hearing record before rendering a decision. *Id.*

[¶16] Dr. Painter argues that her situation is distinguishable from *Wadsworth* and *Barber*. She contends application of the *Mathews* balancing test should yield a different result. "Due process is a flexible concept which calls for such procedural protections as the time, place, and circumstances demand." *Wadsworth*, 2014 WY 7, ¶ 33, 316 P.3d at 551. We therefore apply the *Mathews* factors to this case.

## A.    The Private Interests at Stake

[¶17] Dr. Painter asserts her private interests are greater than those at stake in *Barber* and *Wadsworth*. She argues Mr. Barber did not have a property interest in the certification the Wyoming State Board of Education denied him. *Barber*, 649 P.2d at 683-84. *Wadsworth* addressed the termination of an employment contract, not the potential revocation of licensure. 2014 WY 7, ¶¶ 8-16, 316 P.3d at 544-47. Even if a medical license is a greater private interest, it is balanced in this case by a heightened standard of proof. The standard of proof in *Barber* and *Wadsworth* was a preponderance of the evidence. In contrast, we have held that due process requires the prosecuting Board members to prove disciplinary proceedings in professional licensure cases by clear and convincing evidence. "Potential loss of a license is 'more substantial than mere loss of money and some jurisdictions reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof.'" *Painter v. Abels*, 998 P.2d 931, 941 (Wyo. 2000) (*Painter I*) (quoting *Johnson v. Bd. of Governors of Registered Dentists of State of Okla.*, 913 P.2d 1339, 1345 (Okla. 1996)).

## B.    Risk of Erroneous Deprivation and Probable Value of Additional Procedural Safeguards

[¶18] Dr. Painter argues the risk of an erroneous deprivation is substantially higher in her case than in *Wadsworth* and *Barber*. She asserts that Wyoming Statutes §§ 33-26-202(b)(iii) and 33-26-404(b) require the Board to "conduct" contested case proceedings whereas there was no such requirement in *Barber*. Wyo. Stat. Ann. § 33-26-202(b)(iii) (LexisNexis 2019) ("The board is empowered and directed to: . . . (iii) Conduct informal interviews and contested case proceedings."); Wyo. Stat. Ann. § 33-26-404(b) ("Unless the board and the licensee have agreed to the relinquishment of or imposition of restrictions or conditions on a license, the board shall conduct a proceeding to refuse to renew or reinstate, revoke, restrict or suspend a license on the grounds set forth in W.S. 33-26-402(a) as a contested case under the Wyoming Administrative Procedure Act."). She argues the Board failed to "conduct" the proceeding when it did not require the Board to attend the entire contested case hearing in person.

[¶19] Dr. Painter points us to no authority that suggests to "conduct" means the Board must attend the contested case hearing in-person. "[T]he rules of statutory construction

apply to the interpretation of administrative rules and regulations." *Wilson Advisory Comm. v. Bd. of Cnty. Comm'rs*, 2012 WY 163, ¶ 31, 292 P.3d 855, 863 (Wyo. 2012). "When a term is not defined in a statute, this Court will furnish an ordinary and obvious meaning." *Craft v. State ex rel. Wyo. Dep't of Health*, 2020 WY 70, ¶ 31, 465 P.3d 395, 403 (Wyo. 2020). The verb "conduct" means "to direct or take part in the operation or management of." *Conduct, Merriam-Webster* (merriam-webster.com, last accessed 6/18/2021). Here, the Board conducted a six-day contested case hearing in front of an independent hearing examiner, both parties participated in voir dire of the Board, presented evidence, conducted direct and cross-examination of witnesses, and gave opening statements and closing arguments. The parties submitted the case to the Board which deliberated and issued a detailed order. Additionally, both parties participated in extensive pre-hearing motion practice. This satisfies the statutory requirement that the Board "conduct" the contested case proceeding.

[¶20] Dr. Painter asserts statutory authorization to seat temporary Board members, Wyo. Stat. Ann. § 33-26-201(f), is evidence of legislative intent to require in-person attendance at hearings. But the statute permits the Board president to petition the governor to appoint temporary members if the Board cannot seat a quorum to hear the case. We are not persuaded by Dr. Painter's circular argument that a "quorum" requires the decision-makers to attend in person.

[¶21] Further, both the OAH Rules and the Board's Rules and Regulations allow contested case hearings to proceed without the Board's presence. OAH Rules, ch. 2, § 8(b), Wyo. Bd. of Med. Rules & Regulations, ch. 7, § 12(a). Dr. Painter asserts these rules conflict with the Board's statutory duty to "conduct" hearings and are therefore without force or effect. *Disciplinary Matter of Billings*, 2001 WY 81, ¶ 24, 30 P.3d 557, 568 (Wyo. 2001) (*Billings I*) ("An administrative rule or regulation which is not expressly or impliedly authorized by statute is without force or effect if it adds to, changes, modifies, or conflicts with an existing statute."). Because we hold that the term "conduct" does not require the Board to attend contested case hearings in person, the rules are not in conflict with the statute.

[¶22] Next, Dr. Painter argues the risk of an erroneous deprivation is high because there is no record of what the absent members of the Board reviewed before rendering a decision. However, the Board's Findings of Fact and Conclusions of Law state:

> The Board having fully reviewed, in its entirety, the evidentiary record presented and compiled herein, including video recordings, transcripts of hearing proceedings, and witness testimony, the parties' exhibits including Petitioners' Exhibits A through GG and Respondent's Exhibits 1 through 41, 44 through 46, 47 (pp. 8-14), 48 through 54, arguments of the parties presented during closing summation on July 14,

> 2017, and being otherwise fully advised in the premises,
> enters the following findings, conclusions, and orders[.]

(Footnote omitted.) Further, Dr. Painter's counsel questioned each member of the Board during voir dire and asked those who could not attend in person if they would commit to reviewing the entire record before rendering a decision, and each agreed. In *Wadsworth*, the agencies adopted recommended decisions even though the board members did not review the entire record. 2014 WY 7, ¶ 13, 316 P.3d at 546-47. Here, the record indicates the Board reviewed the entire record and voted on the decision.

## C.    The Government's Interest

[¶23] The government has a legitimate and substantial interest in "protecting the health, safety, and welfare of its citizens from a medical licensee's incompetence or misconduct." *Painter I*, 998 P.2d at 941.

## D.    Balancing the *Mathews* Factors

[¶24] In balancing the factors, Dr. Painter has an important interest in her medical license, professional reputation, and ability to practice medicine. The government has a legitimate and substantial interest in protecting the safety and welfare of its citizens from doctors who violate the MPA. While Dr. Painter asserts her private interest is greater than the private interests in *Wadsworth* and *Barber*, the procedure for disciplinary proceedings related to a medical license already provides greater protection because it requires the Petitioners to prove their case by clear and convincing evidence. *Painter I*, 998 P.2d at 940-41; *Devous v. Wyo. State Bd. of Med. Exam'rs*, 845 P.2d 408, 416 (Wyo. 1993). During the contested case hearing, both parties questioned the Board during voir dire, presented evidence, conducted direct and cross-examination of witnesses, and made closing arguments. Further, the members of the Board stated they would review the entire record before reaching a conclusion and the Board's Findings of Fact and Conclusions of Law reveal that they did, in fact, review the record. The authorization to appoint temporary members does not suggest that members must be present in order to constitute a quorum. The procedures adopted by the Board adequately safeguarded Dr. Painter's interests and did not violate her due process rights.

## II.    *The Board Found Dr. Painter Exploited Her Professional Relationship with the Patient under the Wyoming Medical Practice Act by Clear and Convincing Evidence*

[¶25] Dr. Painter asserts the Board relied on authority outside the MPA to apply a presumption of undue influence and switch the burden of proof, thereby neglecting its burden of finding a violation by clear and convincing evidence. In support of this argument, Dr. Painter directs the Court to paragraphs 630 and 647 of the Board's decision. In paragraph 630, the Board states, "The relationship of the parties is a factor to

be taken into consideration in determining the existence of undue influence. Under certain circumstances, a presumption of undue influence arises from proof of a confidential or fiduciary relationship." In paragraph 647, the Board summarized the actions Dr. Painter took on behalf of the Patient, her involvement in the Patient's life and affairs, and concluded, in relevant part, "A presumption of undue influence arises from proof of a confidential or fiduciary relationship. In this case, the relationship between the parties was multi-faceted. . . . [T]he Board concludes a confidential or fiduciary relationship existed between Patient and [Dr. Painter]." These findings, standing alone, do suggest the Board relied on presumptions that have no place in a proceeding that requires the Board to prove a violation by clear and convincing evidence. Dr. Painter is correct that the Board went far afield of its MPA authority. We conclude, however, that the Board also found clear and convincing evidence Dr. Painter exploited her professional relationship with the Patient within the meaning of the MPA.

[¶26] The term "exploit" is not defined in the MPA. The Board applied two definitions for the term—one common, dictionary definition, and the other from the Adult Protective Services Act. It primarily relied on the Adult Protective Services Act definition which requires a "vulnerable adult" and either undue influence, or a fiduciary relationship. Wyo. Stat. Ann. § 35-20-102(a)(ix).[6] The Board further resorted to law from the Uniform Trust Code, case law on fiduciary relationships, the Restatement (second) of Contracts, and the Wyoming Healthcare Decisions Act. Dr. Painter contends the Board's reliance on this authority exceeded its limited statutory authority and improperly shifted the burden of proof.

---

[6] (ix) "Exploitation" means the reckless or intentional act taken by any person, or any use of the power of attorney, conservatorship or guardianship of a vulnerable adult, to:

    (A)    Obtain control through deception, harassment, intimidation or undue influence over the vulnerable adult's money, assets or property with the intention of permanently or temporarily depriving the vulnerable adult of the ownership, use, benefit or possession of his money, assets or property;

    (B)    In the absence of legal authority:

        (I)    Employ the services of a third party for the profit or advantage of the person or another person to the detriment of a vulnerable adult;

        (II)    Force, compel, coerce or entice a vulnerable adult to perform services for the profit or advantage of another against the will of the vulnerable adult.

    (C) Intentionally misuse the principal's property and, in so doing, adversely affect the principal's ability to receive health care or pay bills for basic needs or obligations; or

    (D) Abuse the fiduciary duty under a power of attorney, conservatorship or guardianship.

Wyo. Stat. Ann. § 35-20-102(a)(ix) (LexisNexis 2019).

10

[¶27] When a term is undefined in a statute, this Court supplies an ordinary and obvious definition. *Craft*, 2020 WY 70, ¶ 31, 465 P.3d at 403. The definition of "exploitation" in the Adult Protective Services Act is neither ordinary nor obvious. The Board's reliance on it depended upon incorporation of principles of law relating to undue influence and fiduciary duty that would improperly adopt presumptions that are contrary to the Board's obligation to find a violation by clear and convincing evidence.

[¶28] The Board also cited the common definition of "exploitation" from *Webster's New Collegiate Dictionary*: "an unjust or improper use of another person for one's own profit or advantage." *Exploitation, Webster's New Collegiate Dictionary* (1980). This definition is also inapplicable because it defines "exploitation," a noun. The MPA prohibits "[a]ny behavior . . . toward a patient . . . that exploits the position of trust, knowledge, emotions or influence of the licensee." Wyo. Stat. Ann. § 33-26-402(a)(xxxv). Instead, we adopt the ordinary definition of the verb exploit: "to make use of meanly or unfairly for one's own advantage." *Exploit, Merriam-Webster* (merriam-webster.com, last accessed 6/18/2021); *see also Kirbens v. Wyo. State Bd. of Med.*, 992 P.2d 1056, 1064 (Wyo. 1999) (rejecting the definition of "willful" used by the Board and Respondent and instead applying the common dictionary definition). We conclude the findings of fact made by the Board support its conclusion that Dr. Painter exploited her professional relationship with the Patient under the plain meaning of the term.

[¶29] The Board made extensive factual findings about Dr. Painter's relationship with the Patient. It found that "[b]ut for [Dr. Painter]'s licensure as a physician, she would not have had access to [the] Patient, nor would she have been able to command the trust and reliance that allowed her to exert . . . control over [the] Patient, her finances, and her ranch." It found that, prior to Dr. Painter becoming involved in the Patient's life, her ranch hands and family members assisted with medication, paying bills, managing the ranch, driving her to appointments, providing food, and other caretaker services. The Board found that the Patient was isolated, lonely, and depressed after her friend moved, her sister died, and her health prevented her from participating in the physical aspects of ranching. Dr. Painter established a friendship with the Patient during this vulnerable time and invited her to lunches, dinners, holidays, and church. Dr. Painter told the Patient to call her "Becky" or "Rebecca" outside the office, referred to the Patient as her "little friend," and encouraged the Patient to use the professional services of people in the community with whom Dr. Painter was connected. The Board found that, over time, the Patient became increasingly dependent on Dr. Painter and Dr. Painter assumed more control over the Patient's life and finances—helping with decisions and negotiations with ranch hands, paying the Patient's bills, and becoming her co-trustee, durable power of attorney, and durable power of attorney for healthcare.

[¶30] It found that Dr. Painter billed the Patient for financial management services at $60/hour. At first, Dr. Painter did not receive compensation because she believed she would be paid out of the trust after the Patient's death. Later, she insisted that she be paid for her services on a monthly basis. Days before the Patient died, Dr. Painter asked to be

11

paid an additional $825 to help pay her attorney fees. After the Patient's death, Dr. Painter "would not give the family the ranch until she was paid and the family released her from liability. Initially, [Dr. Painter] wanted $75,000.00, but through negotiations settled on $35,000.00." Dr. Painter paid herself approximately $42,725 from the Patient's bank accounts (which included the $35,000 payment after the Patient's death). *Painter II*, 2019 WY 108, ¶ 4, 450 P.3d at 1244. Finally, the Board found that Dr. Painter encouraged the Patient to make decisions about the ranch that benefitted Dr. Painter's family and employees and excluded the Patient's family.

[¶31] Dr. Painter contends these findings are inadequate because they are not supported by expert testimony, and she suggests the Petitioner's Denver-based expert witness, Dr. Martinez, could not provide support for the Board's findings because he was not a local expert. The Board evaluated the testimony of all the witnesses, found Dr. Martinez credible, and gave his testimony "great weight." We have not addressed the requirement of a local expert in medical licensure cases; however, we have in medical malpractice cases.[7] In *Vassos v. Roussalis*, we stated, "a strict adherence to the so-called 'locality rule' was no longer necessary in the determination of the standard of care owed by physicians in medical malpractice cases." 658 P.2d 1284, 1288 (Wyo. 1983). We cited Justice Rooney's concurring opinion in *DeHerrera v. Mem'l Hosp. of Carbon Cnty.*, which explained "testimony as to the standards in a similar community . . . should be merely one of the factors to be considered [when determining whether a doctor was negligent], . . . not [the] single controlling factor." 590 P.2d 1342, 1346 (Wyo. 1979) (Rooney, J., concurring).

[¶32] Furthermore, the Petitioner was not required to present expert testimony regarding the standard of care for its exploitation charge. Expert testimony is necessary in cases that require specialized knowledge to establish the standard of care. For example, in *Painter I*, we required the Board to present expert testimony regarding whether Dr. Painter's conduct was contrary to standards of the medical profession when she conducted a patient case study using an Electro Dermal Screening Machine. 998 P.2d at 939. In *Devous*, we required expert testimony to establish whether Dr. Devous failed to properly supervise non-physicians to whom he delegated medical tasks, utilized inappropriate or unnecessary treatments, or exhibited unprofessional conduct. 845 P.2d at 418. In *Billings I*, we required expert testimony to establish that Mr. Billings fell below the industry standard of care when he allowed a guest to get kicked by a mule. *Billings I*, 2001 WY 81, ¶ 18, 30 P.3d at 567.

---

[7] Administrative agencies acting in a judicial or quasi-judicial capacity are not bound by the rules of evidence that govern trials by courts or juries. The WAPA, Wyo. Stat. Ann. §§ 16-3-101 to -115, sets the broad standard for admissibility of evidence at an administrative hearing: The evidence must be of the type that is "commonly relied upon by reasonably prudent men in the conduct of their serious affairs." Wyo. Stat. Ann. § 16-3-108(a); *Griffin v. State ex rel. Dep't of Transp.*, 2002 WY 82, ¶ 11, 47 P.3d 194, 197 (Wyo. 2002).

[¶33]  On the other hand, we do not require expert testimony when the statutes establish a standard of care, or when the subject matter is within the Court's knowledge.  For example, in *Billings II*, we held expert testimony was not necessary to establish that Mr. Billings had willfully abandoned a client because the record was complete and "[n]either the nature of the violation, nor the facts underlying it, involves subject matter 'not within our knowledge' or requiring additional expert testimony."  *Billings v. Wyo. Bd. of Outfitters and Pro. Guides*, 2004 WY 42, ¶ 52, 88 P.3d 455, 475 (Wyo. 2004) (*Billings II*).  In *Penny,* the appellant argued the Board needed expert testimony to establish what constituted practicing clinical social work.  We concluded no expert testimony was necessary under the circumstances because "the nature of the alleged violations is 'within our knowledge' . . . [and] the evidence fully supports the conclusion that the appellant engaged in practices clearly identified in [the statute] as 'clinical social work.'"  *Penny v. State ex rel. Wyo. Mental Health Pro. Licensing Bd.*, 2005 WY 117, ¶ 32, 120 P.3d 152, 170-71 (Wyo. 2005).

[¶34]  This case is more like *Penny* than *Devous*.  The statute establishes that a licensee violates the Medical Practice Act when she engages in "[a]ny behavior . . . toward a patient . . . that exploits the position of trust, knowledge, emotions or influence of the licensee."  Wyo. Stat. Ann. § 33-26-402(a)(xxxv).  We apply the common definition of "exploits" as discussed above.  The nature of the violation and the facts underlying it are within the Board and the Court's knowledge, and the Petitioner was not required to present expert testimony to prove Dr. Painter exploited her professional relationship with the Patient.

[¶35] Dr. Martinez is an expert in ethical issues that arise in the physician-patient relationship.  During the contested case hearing, Dr. Martinez explained the dangers of crossing professional boundaries within the physician-patient relationship.  He explained that "boundary crossings" – for example, friendships between doctors and their patients – can occur and do not necessarily result in harm or exploitation of the patient.  Dr. Martinez opined that each of the several types of relationship between Dr. Painter and the Patient, on its own, was not necessarily a violation.  He testified that doctors often become friends with patients, or are friends before they develop a doctor-patient relationship, and doctors sometimes have business relationships with patients.  He explained, "The problem I worry about when I look at [all these relationships] is how in the heck does a physician, whose primary obligation is to patient care  . . . juggle all these other kinds of relationships. . . . [I]t's the totality of this that gets concerning."  He concluded that:

> Dr. Painter utilized the trust and the foundation of the physician-[patient] relationship . . . [and] ultimately took advantage of her long experience and relationship as a physician with [the Patient] in terms of the knowledge of [the Patient], the knowledge of her family, and the family dynamics, her emotional vulnerability.  She was obviously an

13

elderly woman with medical problems, maybe even some depression now and then. So, yes, there was an exploitation of using that relationship in the development of these other relationships.

[¶36] Dr. Martinez also discussed factors that predispose a patient to financial exploitation. The Board applied these factors in its findings and found that fifteen of them fit the Patient: advanced age; female; unmarried; cognitive impairment; physical, mental or emotional dysfunction (especially depression); dependence on abuser; living alone; social isolation; financially independent with no designated financial caretakers; middle- or upper-income bracket; taking multiple medications; frailty; fear of change in living situation; elderly person subject to deception (misrepresentation/concealment of information for selfish gain); and, elderly person subject to intimidation (perpetrator induces dependency with fear of rejection if demands not met, or creates fear by threat of physical or emotional harm or abandonment).[8] Dr. Martinez also explained that exploitation can occur even when the physician has good intentions.

[¶37] We apply the plain meaning of "exploit," and conclude the Board could reasonably conclude that Dr. Painter exploited her position of trust, knowledge, emotions, or influence to her own profit or advantage. *See* Wyo. Stat. Ann. § 33-26-402(a)(xxxv). Though the Board made multiple references to a "presumption of undue influence" and inappropriately referenced authority outside its scope, such as the Uniform Trust Code and Adult Protective Services Act, the extensive factual findings demonstrate by clear and convincing evidence that Dr. Painter exploited her professional relationship with the Patient to her own advantage.

### III. The Board's Finding That Dr. Painter Improperly Terminated the Physician-Patient Relationship is Supported by Substantial Evidence

[¶38] The Board concluded that Dr. Painter violated Wyo. Stat. Ann. § 33-26-402(a)(xxvii)(N) which provides:

> (a) The board may refuse to renew, and may revoke, suspend or restrict a license or take other disciplinary action, including the imposition of conditions or restrictions upon a license on one (1) or more of the following grounds:
>     . . .

---

[8] The finding that the Patient suffered from a cognitive impairment is not supported by substantial evidence. While the record indicates the Patient was occasionally confused, all the testimony presented at the hearing described the Patient as independent, sharp, and mentally sound.

14

> (xxvii) Unprofessional or dishonorable conduct not otherwise specified in this subsection, including but not limited to:
>
> . . .
>
> (N) Improperly terminating a physician-patient relationship[.]

Board rules require physicians to notify patients of the termination in writing at least thirty days before it goes into effect and specifies the letter must be sent via certified mail, with return receipt requested. Wyo. Bd. of Med. Rules & Regulations, ch. 3, § 5(a).

[¶39] Dr. Painter terminated the physician-patient relationship by instructing her employee to hand-deliver a letter to the Patient.[9] The letter informed the Patient that Dr. Painter could no longer treat her because of the growing complexity of her medical problems, and that the attending physician at Pioneer Manor would continue as her physician. There is no dispute that she did not follow the steps required by the Board rule to terminate the physician-patient relationship.[10]

[¶40] Dr. Painter contends expert testimony was required to support the Board's finding this violation occurred. For the reasons discussed above, expert testimony is not required to determine whether Dr. Painter adequately notified her patient of the termination. *Supra*, ¶¶ 32-33.

[¶41] Dr. Painter next argues she substantially complied with the rule but offers no analysis to support that position. The Board rule requires doctors to send termination letters via certified mail, return receipt requested, with thirty days' notice. Wyo. Bd. of Med. Rules & Regulations, ch. 3, § 5(a). The letter Dr. Painter claims she gave the Patient terminated the physician-patient relationship immediately and was hand-delivered by Dr. Painter's employee. Dr. Painter's termination letter did not meet any of the requirements of the Board rule. The Board's conclusion is supported by substantial evidence.

## IV. The Board Exceeded Its Statutory Authority When It Amended the Rule to Allow It to Assess Fees

[¶42] The parties disagree whether the Board had statutory authority to assess one half of the prosecuting attorney and hearing officer fees to Dr. Painter. They also disagree

---

[9] Petitioner asserts Dr. Painter waived this argument because she did not raise it at the district court level. A review of the record indicates that Dr. Painter incorporated all arguments from her first appeal into her second, and the district court agreed to "consider and rule on the arguments and claims made in [the first appeal]."

[10] The Board cited testimony of the Patient's niece casting doubt on whether the Patient ever received a termination letter but made no finding.

whether the fees are reasonable under the "lodestar" test: "the product of 'reasonable hours times a reasonable rate.'" *State ex rel. Wyo. Workers' Comp. Div. v. Brown*, 805 P.2d 830, 858 (Wyo. 1991) (quoting *UNC Teton Expl. Drilling, Inc. v. Peyton*, 744 P.2d 584, 595 (Wyo. 1989)). Because the first issue is dispositive, we do not reach the second.

[¶43] Wyo. Stat. Ann. § 33-26-405(a)(viii) permits the Board to "[a]ssess part or all of the ***cost*** of the proceeding against a disciplined licensee." *Devous*, 845 P.2d at 419 (emphasis added). In *Devous*, as here, the Board attempted to assess its attorney and hearing officer fees against a disciplined licensee. *Id.* at 418-19. This Court applied the American Rule, under which each party in a lawsuit covers his or her own attorney fees unless a statute or contract dictates otherwise. *Id.* at 418. We held the district court properly denied both fees because we found no statutory authority for them. *Id.* at 418-19. We stated, "nowhere in the statutes or rules in this jurisdiction has the term 'costs' been construed to include" the Board's attorney and hearing officer fees. *Id.* at 419. We reaffirmed this holding in *Painter I* and held that "costs" under § 33-26-405(a)(viii) do not include the cost of the hearing officer, therefore the assessment was capricious and not in accordance with law. *Id.*, 998 P.2d at 942.

[¶44] Petitioner claims the Board now has authority to assess those fees because it promulgated a rule which defines "costs" as including "reasonable attorneys' fees incurred by the board, [and] hearing officer fees . . . ." Wyo. Bd. of Med. Rules & Regulations, ch. 1, § 3(s). However, agency authority is limited to that which is expressly granted by the legislature. *Hayse*, 2020 WY 4, ¶ 11, 455 P.3d at 273. *See also Billings I*, 2001 WY 81, ¶¶ 24-26, 30 P.3d at 568-69 (Wyoming State Board of Outfitters and Professional Guides improperly expanded its power with a rule that permitted revocation of a license for "any breach" of contract when statute required a "substantial" breach). Because "[a]dministrative agencies are creatures of statute and their power is dependent upon statutes . . . they must find within the statute warrant for the exercise of any authority which they claim." *MH v. First Jud. Dist. Ct. of Laramie Cnty.*, 2020 WY 72, ¶ 13, 465 P.3d 405, 409 (Wyo. 2020) (quoting *Amoco Prod. Co. v. State Bd. of Equalization*, 12 P.3d 668, 673 (Wyo. 2000)). "An agency is wholly without power to modify, dilute or change in any way the statutory provisions from which it derives its authority." *Hayse*, 2020 WY 4, ¶ 11, 455 P.3d at 273 (quoting *Platte Dev. Co. v. State, Env't Quality Council*, 966 P.2d 972, 975 (Wyo. 1998)).

[¶45] Petitioner takes the position the Board has broad authority to promulgate rules pursuant to Wyo. Stat. Ann. § 33-26-202, and therefore the rule "clearly carries the force and effect of law." Wyo. Stat. Ann. § 33-26-202(b)(xiii) empowers the Board to "[t]ake all reasonable action, including the promulgation of rules and regulations, necessary to enforce this chapter." A general grant of authority will sometimes suffice to validate rules and regulations promulgated by an agency. *Diamond B Servs., Inc. v. Rohde*, 2005 WY 130, ¶ 60, 120 P.3d 1031, 1048 (Wyo. 2005). However, "[a]n agency may not rewrite a statute through its rulemaking power." *Wyo. Downs Rodeo Events, LLC v. State*, 2006 WY 55, ¶ 14, 134 P.3d 1223, 1230 (Wyo. 2006) (citing *U.S. West Commc'n,*

*Inc. v. Wyo. Pub. Serv. Comm'n*, 992 P.2d 1092, 1096 (Wyo. 1999)). We interpreted "costs" to exclude attorney fees and hearing officer fees in *Painter I* and *Devous*. "[W]hen this Court interprets a statute and the legislature makes no material legislative change in the provision thereafter, the legislature is presumed to acquiesce in the Court's interpretation." *Wyo. Dep't of Revenue v. Qwest Corp.*, 2011 WY 146, ¶ 23, 263 P.3d 622, 629 (Wyo. 2011) (quoting *SLB v. JEO*, 2006 WY 74, ¶ 14, 136 P.3d 797, 801 (Wyo. 2006)). The legislature has taken no action to amend the statute since the Court interpreted the term. The Board may not step into the legislature's shoes and redefine the term to overturn this Court's jurisprudence. Wyo. Const. art. 2, § 1.

[¶46] Petitioner tries to distinguish between an "assessment" of costs against Dr. Painter and an "award" of costs to the Board. Petitioner claims attorney fees are not an award, designed to punish the losing party, but a mechanism to indemnify the prevailing party, and shift the costs of litigation to make the plaintiff whole. He also reasons an assessment cannot be an award because it is punitive against Dr. Painter and the hearing was "quasi-criminal," rather than a civil action where the American Rule normally applies. However, Petitioner does not explain why this Court should consider the assessment a punishment when it also imposed a civil fine of $15,000 against her. Without statutory authority to the contrary, the Board is bound by our holdings in *Devous* and *Painter I* and may not assess its prosecuting attorney and OAH hearing officer fees against Dr. Painter. *Painter I*, 998 P.2d at 942; *Devous*, 845 P.2d at 419.

## *CONCLUSION*

[¶47] The procedure provided by the contested case hearing did not violate Dr. Painter's due process rights. While the Board inappropriately referenced outside authority in its determination that Dr. Painter exploited her professional relationship with the Patient, its conclusion was based on clear and convincing evidence and did not require expert testimony. And, substantial evidence supports the Board's finding that Dr. Painter improperly terminated the physician-patient relationship. Finally, the Board cannot assess its hearing officer and attorney fees against Dr. Painter. We affirm.